**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**ADVANCED SYSTEMS, INC.,
Respondent.**

No. 81–7136.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1982.

Decided April 23, 1982.

As Amended June 23, 1982.

Susan L. Williams, Washington, D. C., for petitioner.

William R. Hayden, Snell & Wilmer, Phoenix, Ariz., for respondent.

Before CHOY, GOODWIN and FARRIS, Circuit Judges.

CHOY, Circuit Judge:

The NLRB applies for enforcement of its bargaining order. It found that Advanced Systems, Inc., had committed an unfair labor practice when it refused to bargain with the Union after a representation election. The Company asserts that the Board abused its discretion when it: (1) overruled the Company's election objections without reviewing the documentary evidence underlying the Regional Director's reports and without making this evidence part of the agency record for judicial review; and (2) denied the Company an evidentiary hearing on whether threats and vandalism during the election campaign require setting aside the election. We agree. Accordingly, we deny enforcement of the order and remand the case for an evidentiary hearing.

I

After the Union won a consent election on August 10, 1979, the Company objected to the election on the ground that the Union, through its agents, had threatened physical assaults on employees and created an atmosphere of fear that interfered with the election. The Company submitted documentary evidence and a memorandum of points and authorities to substantiate its claim. After an ex parte investigation during which he collected affidavits from em-

ployees, the Regional Director issued a report denying the Company's request for a hearing and recommending that the Board overrule the Company's objections.

The Company moved for reconsideration on the basis of new evidence consisting of an affidavit of employee Stephen Halpaus. After granting the motion and conducting an additional ex parte investigation, the Regional Director issued a supplemental report, again recommending that the objections be overruled.

The Company then filed exceptions with the Board, attaching an affidavit of employee Lance Hibbert, which had allegedly not been available previously. The Board, without a hearing, adopted the Regional Director's recommendations and certified the Union.

To obtain judicial review of the certification, the Company refused to bargain with the Union.[1] The Board found that the Company's refusal to bargain violated section 8(a)(1) and (5) of the National Labor Relations Act. It now petitions for enforcement of its bargaining order against the Company.

## II

■ The Company was not required to bargain with the Union if the Board abused its discretion in certifying the Union. *Heavenly Valley Ski Area v. NLRB*, 552 F.2d 269, 271 (9th Cir. 1977). The Board, however, enjoys wide discretion in conducting and supervising representation elections. *Spring City Knitting Co. v. NLRB*, 647 F.2d 1011, 1017 (9th Cir. 1981); *NLRB v. Masonic Homes, Inc.*, 624 F.2d 88, 89 (9th Cir. 1980). Its denial of an evidentiary hearing on election objections may be disturbed only for an abuse of discretion. *Spring City Knitting Co.*, 647 F.2d at 1017; *Masonic Homes*, 624 F.2d at 89. To obtain a hearing, a party must make a prima facie showing of substantial and material factual issues that would, if true, warrant setting

aside the election. *Spring City Knitting Co.*, 647 F.2d at 1017; *Masonic Homes*, 624 F.2d at 89.

■ The Board is entitled to rely on the Regional Director's report in the absence of specific exceptions supported by offers of proof of facts contrary to the Regional Director's findings. *NLRB v. Belcor, Inc.*, 652 F.2d 856, 859 (9th Cir. 1981). If, however, there are substantial and material factual disputes between the election report and the exceptions, a hearing is required. *Id.*

## III

Our review of the Board's decision in this case is hampered by the incompleteness of the record on appeal. In transmitting the original and supplemental election reports to the Board, the Regional Director did not send any of the underlying documentation relied on in the reports. Thus, the only evidentiary material before the Board was the Hibbert affidavit that the Company attached to its exceptions. Missing from the record are the Halpaus affidavit submitted by the Company, the additional affidavits obtained by the Regional Director, other documentary evidence (such as campaign literature) submitted by the Company, and a memorandum of points and authorities that the Company attached to its election objections. It is unclear how many affidavits the Regional Director obtained through his own investigation because the election reports do not identify any of the affiants they refer to. However, the Company asserts that it presented four employees to the Regional Director for affidavits. The Regional Director apparently took affidavits from these four employees and discussed the affidavits in his reports.

The Company argues that the Board abused its discretion when it: (1) adopted the Regional Director's reports without reviewing the underlying documentation; and (2) failed to include this documentation in

---

1. This court cannot directly review an election certification. If the Company refuses to bargain with the Union, however, the certification can be reviewed in the ensuing unfair labor practice proceedings. *NLRB v. Dick Seidler Enterprises*, 666 F.2d 383, 385 n.1 (9th Cir. 1982).

the record transmitted to the court. The Board interprets its rule, set forth in 29 C.F.R. § 102.69(g), to provide that the Regional Director need not transmit the entire record to the Board in cases in which no hearing was held. This interpretation was rejected in *NLRB v. Consolidated Liberty, Inc.*, 672 F.2d 788, 790 (9th Cir. 1982). There we held that section 102.69(g) requires the Regional Director to forward to the Board all the relevant evidence underlying the Regional Director's report, and that the Board abdicates its statutory responsibilities when it adopts the report without reviewing the underlying evidence. *Id.*

 In *Consolidated Liberty*, however, none of the items missing from the record were evidence that the objecting party itself submitted to the Regional Director. Here, at least one of the missing items is an affidavit that the Company submitted (the Halpaus affidavit). It could be argued that section 102.69(g) requires the objecting party to transmit to the Board the documents it submitted to the Regional Director. The rule at the relevant time period provided:

> The notice of hearing, motions, rulings, orders, stenographic report of the hearing, stipulations, exceptions, documentary evidence, together with the objections to the conduct of the election or conduct affecting the results of the election, any report on such objections, any report on challenged ballots, exceptions to any such report, any briefs or other legal memoranda submitted by the parties, the decision of the regional director, if any, and the record previously made as described in § 102.68, shall constitute the record in the case. Materials other than those set out above shall not be a part of the record; except that in a proceeding in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, a request for

review of a regional director's decision on objections or challenges, or any opposition thereto, may append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision. Immediately upon issuance of a report on objections or challenges, or both, upon issuance by the regional director of an order transferring the case to the Board, or upon issuance of an order granting a request for review by the Board, the regional director shall transmit the record to the Board.

29 C.F.R. § 102.69(g) (1981).[2]

In *Consolidated Liberty*, the Board argued that the second sentence of the rule would be meaningless if the Regional Director were required to transmit the entire record in a nonhearing case. Although the court rejected this argument, it did not decide how the second sentence should be interpreted. 672 F.2d at 790. Thus, *Consolidated Liberty* leaves open the possibility of interpreting the second sentence to require the objecting party to transmit the documents it submitted, even though the Regional Director must transmit the other documents. The sentence could also be construed, however, as merely creating an exceptional means of placing before the Board documents submitted to the Regional Director but excluded from the record and not considered by him (for example, documents that the Regional Director treated as irrelevant or untimely). *See NLRB v. Klingler Electric Corp.*, 656 F.2d 76, 83 (5th Cir. 1981). Under this interpretation, the Regional Director would be required to transmit any materials he relied on in his report, regardless of who submitted the materials.

The latter interpretation is more consistent with the language of the rule, which provides that the objecting party "may append" to its exceptions copies of documents

2. The Board has recently revised 29 C.F.R. § 102.69(g) to provide that the record before the Board in a nonhearing case shall include "any documentary evidence, excluding statements of witnesses, relied upon by the regional director in his decision or report." 46 Fed.Reg. 45,921, 45,924 (1981) (to be codified in 29 C.F.R. § 102.69). The revised rule allows an excepting party to append to its exceptions copies of the affidavits that it timely submitted to the Regional Director. *Id.* These revisions, however, took effect after the proceedings in this case.

"not included in the [Regional Director's] report." It also avoids the cumbersome procedure of requiring the objecting party to assemble and transmit part of the record. The Regional Director has all the evidence in his possession and can easily transmit it. *See Prestolite Wire Division v. NLRB*, 592 F.2d 302, 305 (6th Cir. 1979). Furthermore, to interpret the rule to allow the Regional Director to exclude from the record evidence that he relied on would frustrate meaningful review by the Board and the court of appeals. *See NLRB v. Klingler Electric Corp.*, 656 F.2d at 84; *NLRB v. North Electric Co.*, 644 F.2d 580, 583–84 (6th Cir. 1981).

■ The difficulty of performing meaningful judicial review in this case illustrates the speciousness of the Board's argument that it need not review the evidence relied on by the Regional Director. The Board correctly points out that its role in reviewing exceptions to the Regional Director's report is not to resolve factual disputes on the basis of an evidentiary record but to determine whether there is a substantial and material dispute between the facts presented in the report and those presented in the exceptions. It does not follow, however, that the Board and reviewing courts need never examine the evidentiary support of the Director's report. In this case, a review of the documentation submitted by the Company is necessary to decide whether the factual assertions in the exceptions differ materially from those in the Regional Director's report. Without seeing all the affidavits submitted by the Company, we cannot determine whether the Regional Director accurately paraphrased them, whether he gave the proper relative emphasis to the paraphrased statements or took them out of context, and whether he viewed the evidence in the light most favorable to the Company or made credibility choices. *See NLRB v. Curtis Noll Corp.*, 634 F.2d 1027, 1029 (6th Cir. 1980). This is particularly important where, as here, the Director's report contains numerous conclusory characterizations of the Company's affidavits.

■ The Board next argues that the Company has waived its right to challenge the incompleteness of the record because it did not raise this issue at any point in the Board proceedings. Section 10(e) of the Act, 29 U.S.C. § 160(e), precludes us from considering any objection not raised before the Board "unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." The Company asserts that it did not discover until the Board filed its certificate of record with this court that the Regional Director had not transmitted the complete record to the Board.

The Board counters that the Regional Director's report put the Company on notice that the Regional Director would exclude the materials in question from the record. The report advised the Company that:

[p]ursuant to Section 102.69(g), affidavits and other documents which a party has submitted timely to the Regional Director in support of objections are not part of the record unless included in the Regional Director's Report or appended to the exceptions or opposition thereto which a party submits to the Board.

This statement gave the Company no notice that documents secured by the Regional Director himself (as opposed to documents submitted by the Company) would be excluded from the record.

Nor did it clearly indicate that documents submitted by the Company would be excluded unless the Company appended them to its exceptions. The statement does not require the Company to append documents to its exceptions unless they are not "included" in the report. If the Company construed the second sentence of section 102.-69(g) to refer to an exceptional procedure as discussed above, it could have logically assumed that documents "included in the report" were those that the report discussed or relied on. Under this interpretation, any documents that the report relied on would be forwarded to the Board along with the report. The Fourth and Sixth Circuits have concluded that section 102.69(g) is too ambiguous to put a party on notice that the

complete record will not be transmitted to the Board. *See NLRB v. Cambridge Wire Cloth Co.,* 622 F.2d 1195, 1197–98 (4th Cir. 1980); *Prestolite Wire Division v. NLRB,* 592 F.2d at 305. *See also Stephenson v. NLRB,* 614 F.2d 1210, 1215 n.3 (9th Cir. 1980) (dictum suggesting that no waiver occurred on the *Prestolite* facts). We also conclude that the ambiguities in section 102.69(g) and in the Regional Director's report constitute "extraordinary circumstances" that excuse the Company's failure to object before the Board that the record was incomplete.

We are not impressed with the Board's assertion that any error of the Regional Director in failing to transmit the entire record did not prejudice the Company. The Board asserts that the Company already has copies of the Halpaus affidavit and the four affidavits that the Regional Director obtained from employees suggested by the Company. Regardless of the Company's access to the affidavits, however, their absence from the record makes meaningful Board and judicial review impossible. Therefore, Company access to the materials does not make their exclusion harmless.[3]

■ Finally, the Board argues that it was entitled to rely on the Regional Director's report without resort to the full administrative record because the Company's exceptions lack specificity. There is no merit to the Board's assertion that the Company has failed to allege specific facts. The difficulty in determining whether the exceptions materially dispute the Regional Director's findings stems not from the Company's lack of specificity but from the Regional Director's failure to disclose the evidentiary basis of his conclusions. Furthermore, the incompleteness of the record requires us to construe the Company's well-pleaded factual assertions most favorably to the Company. *NLRB v. Belcor, Inc.,* 652 F.2d 856, 859 (9th Cir. 1981). So construed,

the Company's exceptions raise substantial and material allegations of threats and vandalism that would, if true, require the election to be set aside.

## IV

■ A party seeking to overturn an election because of coercive conduct carries a heavy burden. *Spring City Knitting Co. v. NLRB,* 647 F.2d 1011, 1019 (9th Cir. 1981); *NLRB v. Masonic Homes, Inc.,* 624 F.2d 88, 90 (9th Cir. 1980). The question is whether the coercive conduct so influenced potential voters that a free choice was impossible. *Spring City Knitting Co.,* 647 F.2d at 1019; *Masonic Homes,* 624 F.2d at 90. In assessing the effect of the conduct on the election, less weight is accorded to conduct not attributable to the union or employer. *NLRB v. Sauk Valley Manufacturing Co.,* 486 F.2d 1127, 1131 n.5 (9th Cir. 1973). The test for setting aside an election because of third-party conduct is whether the conduct was "so aggravated" that it made a free choice impossible. *NLRB v. Aaron Brothers Corp.,* 563 F.2d 409, 412 (9th Cir. 1977).

Of the alleged coercive conduct in this case, the most troubling is an incident that occurred on August 6, 1979, four days before the election.

### A. The August 6 Threat

On August 6, Barry Brooks, a member of the Union's in-plant organizing committee, asked employee Halpaus how he was going to vote. After Halpaus said he would not vote for the Union, Brooks stated that if the Union won, it would not support those employees who had not supported it. Brooks also said that the Union would use its influence to fire and make life miserable for anti-Union employees and that " 'we' might have to break some legs and hit people with baseball bats in the head." The

---

**3.** The Board also cites its need for confidentiality in taking employee affidavits as a justification for excluding the affidavits from the record. If the Company already has copies of the affidavits, however, they are hardly confidential. The Company does not raise the issue

whether any additional affidavits the Regional Director took beyond the four suggested by the Company should be in the record. Therefore, we do not decide what circumstances, if any, might justify keeping such affidavits confidential.

conversation ended with Brooks stating that he hoped Halpaus would change his mind.

■ Whether this incident might warrant setting aside the election and therefore requires an evidentiary hearing may turn on whether Brooks was acting as an agent of the Union. Under the National Labor Relations Act, the Union's responsibility for acts by its officers and members is controlled by common law agency principles; therefore, implied or apparent authority is sufficient to establish agency. *Hasbrouck v. Sheet Metal Workers Local 232*, 586 F.2d 691, 693 (9th Cir. 1978); *Laborers Local 341 v. NLRB*, 564 F.2d 834, 839 (9th Cir. 1977); *see* 29 U.S.C. § 152(13).

■ The Regional Director concluded that even though Brooks was a member of the Union's in-plant organizing committee, he had not been acting as a Union agent when he threatened Halpaus. This conclusion was based on the Regional Director's findings that: (1) the Union specifically instructed the committee members not to threaten employees; and (2) professional Union organizers were stationed near the back door of the plant during the last two weeks of the campaign. The Company's exceptions do not contest the first finding. An express instruction to an in-plant organizing committee not to threaten anyone is not controlling on the issue of union agency, however, if other indicia of agency are present and if there is no evidence that the union disavowed the committee members' misdeeds. *See NLRB v. Georgetown Dress Corp.*, 537 F.2d 1239, 1243–44 (4th Cir. 1976).

■ Other evidence suggests that Brooks had apparent authority. The Regional Director found that the Union had "appointed" Brooks as one of ten committee members and had "requested" him and the others to solicit employee support. The Company's exceptions also quote various affidavits as stating that: (1) Brooks was named as a Union organizer on Union leaflets and communications to the Company; (2) the Union suggested that Brooks would

be a good candidate for shop steward after the election; (3) Brooks told several employees he would be shop steward; and (4) employees considered him the "primary spokesman" for the Union. There is also evidence that Brooks relayed information and questions between employees and the professional organizers, although other evidence suggests that the employees could go to the professional organizers directly.

These facts present a close case on the issue of union agency. *See Georgetown Dress Corp.*, 537 F.2d at 1243; *Certain-Teed Products Corp.*, 562 F.2d 500, 510–11 n.5 (7th Cir. 1977). We conclude that the Company's well-pleaded factual assertions raise a substantial and material issue whether Brooks had apparent authority despite the presence at the plant of the professional organizers and despite their instructions not to threaten employees. A hearing is therefore required to determine whether Brooks's threat, when coupled with his apparent authority, so influenced the voters that it made a free choice impossible.

### B. Other Incidents

The conclusion that a hearing is necessary is buttressed by the Company's other allegations. Lance Hibbert was a former member of the in-plant organizing committee who had told other employees that he no longer supported the Union. On the morning of the election, the seats of Hibbert's car were slashed while it was parked in the Company parking lot. The Company called in the police, but the culprit was never identified.

Although there is no evidence of Union responsibility for the seat-slashing, the conduct may have been so aggravated that it made a free election impossible. Unlike the anonymous vandalism held insufficient to overturn an election in *Belcor*, 652 F.2d at 861, and *NLRB v. Spring Road Corp.*, 577 F.2d 586, 588 & n.3 (9th Cir. 1978), the slashing of Hibbert's seats has a strong circumstantial link to the election; the incident occurred on election day to an employee who had recently changed his mind about voting for the Union.

The Company also submitted evidence of statements that Brooks and another Union supporter, Steve Mader, allegedly made in the presence of two supervisors and several employees approximately one month before the election. The supervisors had approached Brooks and Mader and threatened to replace them if the Union went on strike. Brooks and Mader allegedly responded that in the event of a strike, they would beat up with baseball bats anyone who tried to take their jobs away.

The Regional Director concluded that these threats, even if they occurred, did not raise substantial and material issues because: (1) the threats were provoked by the supervisors; and (2) the threats were not based on how an employee would vote in the election but on the remote contingency that the Union would be certified and would go on strike and that the Company would then hire replacement workers. In its exception to this finding, the Company quotes from numerous affidavits describing threats by Brooks to beat up strikebreakers. Without seeing these affidavits, it is impossible to determine whether they all describe the same incident discussed by the Regional Director or whether Brooks allegedly made similar threats on other occasions when he was not provoked.

Without seeing the evidence that was before the Regional Director, we cannot determine if there are material disputes about how many times Brooks threatened to beat up strikebreakers, whether the employees feared Union reprisals, and other critical facts. Viewed in the light most favorable to the Company, however, the exceptions make a prima facie showing that threats and vandalism prevented a free election.

### V

We deny enforcement of the Board's bargaining order and remand to the Board for an evidentiary hearing on the election objections. We also reaffirm that the Board abdicates its responsibilities when, despite well-pleaded exceptions to the Regional Director's report, the Board adopts the report without examining the underlying evidence.

ENFORCEMENT DENIED.