## BELL FOUNDRY COMPANY, Petitioner/cross-respondent,

### v.

## NATIONAL LABOR RELATIONS BOARD, Respondent/cross-petitioner.

### Nos. 86–7118, 86–7155.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1987.

Decided Sept. 15, 1987.

---

James G. Johnson and Susan L. Schwartz, Los Angeles, Cal., for petitioner/cross-respondent.

Kenneth B. Hipp, Deputy Asst. Gen. Counsel, Washington, D.C., for respondent/cross-petitioner.

Before KENNEDY and POOLE, Circuit Judges, and LOVELL,[*] District Judge.

POOLE, Circuit Judge:

After a landslide victory of the Teamsters Local 848 in a Stipulated Certification upon Consent Election, Bell Foundry Company (Bell, the Company) refused to bargain, claiming that the Union had been improperly certified because of alleged

---

[*] Honorable Charles C. Lovell, United States District Judge, District of Montana, sitting by designation.

election improprieties. The National Labor Relations Board certified the Union as the collective bargaining representative of Bell's employees. Bell petitions for review, and the Board cross-petitions for enforcement of its order. We agree with the Board that the Company is in violation of Section 8(a)(1) and (5) of the Labor Management Relations Act (the Act) in its refusal to bargain with the Union, and that the order of the Board should be enforced.

## FACTS

Bell operates a foundry in South Gate, California, and is an employer engaged in commerce within the meaning of section 2 of the Act, 29 U.S.C. § 152. In September 1981, Wholesale Delivery Drivers & Salesmen Local 848 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (the Union) filed a representation petition with the Regional Director of the National Labor Relations Board (NLRB) seeking certification as the collective bargaining representative of these employees.

The Board conducted a secret-ballot election on October 23, 1981. Of the approximately 123 eligible voters in the appropriate bargaining unit, 101 voted for the Union, 5 voted against the Union, 1 cast a void ballot, and 1 cast a challenged ballot.

The Company timely filed four objections to the election, claiming 1) that prior to the election, union officials had threatened employees with violence, 2) that union officials and supporters had improperly compelled employees to sign authorization cards before they would be permitted to attend group meetings of employees at the Union's offices and hall, 3) that certain of the Union's election-eve activities were coercive, and 4) that mishandling of the ballot box during the afternoon election session required that the election be set aside.

After conducting an administrative investigation into Bell's objections, the Board's Regional Director issued a report in December 1981, recommending that Bell's objections be overruled and the Union certified. Bell filed exceptions with the Board, including with its exceptions copies of the sworn declarations and evidence which it had submitted to the Regional Director.

In January 1985, the Board issued a Decision and Direction adopting the Regional Director's recommendation that the Company's objections (2), (3), and (4) be overruled, but finding that objection (1) and supporting evidence warranted a hearing into whether the Union had in fact threatened employees with violence. The case was remanded to the Regional Director for a hearing on this first objection only.

After hearing, a hearing officer issued a Report and Recommendation finding that Bell had presented no credible evidence of threats by the Union or its supporters against employees, and therefore recommending that objection (1) be dismissed and the Union certified. Bell filed timely exceptions.

On June 26, 1985, the Board issued a Decision and Certification of Representative in which it adopted the recommendation of the hearing officer and certified the Union as the employees' bargaining representative. In order to obtain judicial review, Bell refused the Union's subsequent demand to bargain, contending that the Union had been improperly certified. The Acting Regional Director issued a Complaint and Notice of Hearing, charging the Company with violating Section 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1), (5). Proceedings were transferred to the Board, which granted the General Counsel's motion for summary judgment and ordered that the Company bargain with the Union. From this decision of the Board Bell petitions for review. The Board has cross-petitioned for enforcement of its order.

## DISCUSSION

*Objection 1*

The Board's wide discretion in supervising representation elections and in certifying a successful union is well-established. *NLRB v. Sauk Valley Mfg. Co.*, 486 F.2d 1127, 1130 (9th Cir.1973); *see also NLRB v. Island Film Processing Co., Inc.*, 784 F.2d 1446, 1450 (9th Cir.1986); *NLRB v. Best Products Co., Inc.*, 765 F.2d 903, 908 (9th Cir.1985). Where, as here, the Board has held a hearing on a party's objection, the Board's findings of fact must be affirmed

if supported by substantial evidence. *NLRB v. Broadmoor Lumber Co.,* 578 F.2d 238 (9th Cir.1978).

■ The Company's first objection is that prior to the election, union officials and supporters directly and indirectly threatened employees with violence and other physical reprisals unless they supported the Union and it's activities. As the party challenging the election, Bell Foundry had the burden of showing by specific evidence at the hearing that 1) improprieties occurred, and 2) that they interfered with the employees' exercise of free choice to such an extent materially to have affected the election results. *NLRB v. Krafcor Corporation,* 712 F.2d 1268, 1269 (8th Cir. 1983) (citing *Beaird-Poulan Division, Emerson Electric Company,* 649 F.2d 589 (8th Cir.1981). The Board's hearing officer determined after hearing that Bell had produced no credible evidence to meet even the first requirement. Bell argues that the Board's dismissal of the objection, based as it was upon the hearing officer's report, was not supported by substantial evidence and should therefore be set aside. This argument is meritless.

In her report, the hearing officer discussed in detail the testimony of the witnesses presented by Bell—Jerry Lawrence and Isidro Garcia—and found that neither had presented credible evidence regarding the alleged threats. The hearing officer discredited all of Lawrence's testimony as "vague, contradictory, ... unnecessarily inventive" and without corroboration. She found Garcia's testimonial demeanor poor and his testimony unconvincing. By contrast, the hearing officer fully credited the testimony of the Union's witness Harvey Lomeli, adjudging his demeanor "candid and sincere both on direct and on cross-examination."

■ Because the Board hearing officer who observes the witnesses and hears their testimony is in the best position to judge witness credibility, such determinations are entitled to great deference and will not be disturbed unless a clear preponderance of all the relevant evidence convinces the court that they are incorrect. *NLRB v. Pacific International Rice Mills, Inc.,* 594 F.2d 1323, 1326 (9th Cir.1979). Our review of the testimony and of the hearing officer's determinations reveals that her credibility resolutions this case are cogent and well-supported.

■ The Company, however, claims that any lack of credibility of its witnesses was due entirely to "faded memories," which were the direct result of an "unconscionable delay" by the Board—approximately 3 years—before remanding objection (1) for hearing. Bell argues that this alleged prejudicial effect of delay by the Board constitutes sufficient grounds to deny enforcement of the bargaining order, citing *NLRB v. Katz,* 701 F.2d 703 (7th Cir.1983); *NLRB v. Connecticut Foundry Co.,* 688 F.2d 871 (2nd Cir.1982); and *NLRB v. Nixon Gear, Inc.,* 649 F.2d 906 (2nd Cir.1981). But none of the cases upon which Bell relies stands for the proposition that delay is prejudicial in itself;[1] indeed, this court has not hesitated in the past to order hearings on election objections long after the objectionable conduct occurred. *E.g. NLRB v. West Coast Liquidators, Inc.,* 725 F.2d 532 (9th Cir. 1984) (election objections case remanded for hearing three and a half years after election); *NLRB v. Belcor, Inc.,* 652 F.2d 856 (9th Cir.1982) (remand ordered over 2 years after election). Certainly, Bell has failed to demonstrate any specific prejudice resulting from the delay in this case. To the extent that delay may have adversely affected any testimony, it would have impacted equally upon the company and union witnesses. We therefore hold that the Board's dismissal of objection (1) after

---

1. In each of the cases cited by the Company, the Board was found to have incorrectly denied a hearing in the first instance, and in each case, the election was particularly close so that the failure of the Board to order a hearing was all the more egregious and/or prejudicial. *See, e.g. NLRB v. Nixon Gear, Inc.,* 649 F.2d at 914 ("The Board's abuse of its discretion was exacerbated by the circumstances of this case. The election result was extremely close.... [T]he need for a hearing is particularly acute when ... an election is close, for in such a situation, 'even minor misconduct cannot be summarily excused on the ground that it could not have influenced the election'" [citations omitted] ).

hearing was fully supported by substantial evidence.

We turn now to Bell's other objections.

*The Record On Review*

■ The Board's denial of an evidentiary hearing on Bell's remaining election objections may be disturbed only for an abuse of discretion. *NLRB v. Advanced Systems, Inc.*, 681 F.2d 570 (9th Cir.1982). The Company argues that the record before the Board in the representation proceeding improperly failed to include statements of Union witnesses taken by the Regional Director upon which he allegedly "relied" in his administrative investigation, and that reliance on what is an incomplete record constituted an abuse of discretion by the Board requiring remand.

■ In support of this contention the Company relies heavily on certain language in *West Coast Liquidators v. NLRB*, 725 F.2d 532 (9th Cir.1984), where we recognized that in some situations, meaningful review may be frustrated if the record does not include "all evidence relied upon by the regional director." *Id.* at 534.[2]

■ We need not, however, labor with the Company's contention that the record was incomplete in this case,[3] because even if the Regional Director's failure to forward *all* of the affidavits before him can be shown to be error, it is clearly harmless error in this case.[4] In any challenge to a representation election, the burden rests with the objecting party to make out a prima facie showing of substantial and material factual issues that would, if true, warrant setting aside the election. *Advanced Systems*, 681 F.2d at 572. Therefore, where the Board certifies the Union without the benefit of either a hearing or a full record, we must construe the 'well pleaded factual assertions of the objection most favorably to the excepting party,' and will remand to the Board to order a hearing if those factual assertions create a material issue of fact. *NLRB v. Belcor, Inc.*, 652 F.2d at 859, (quoted in *NLRB v. Eskimo Radiator Mfg. Co.*, 688 F.2d 1315, 1318 (9th Cir.1982)). *See also West Coast Liquidators*, 725 F.2d at 535 n. 2. Even if we view the allegations most favorably to Bell Foundry, it is apparent than none of the allegations of its three objections, if true, would create material issues of fact entitling the Company to a hearing.

*Objection 2*

Bell's second objection was that before the election, union officials and supporters compelled employees to sign union authorization cards before they were permitted to attend group meetings of employees at the Union's business offices and hall. In support, the Company presented a witness who stated that two employees had told him that when they went to meetings at the

---

**2.** The court limited its holding to "situations in which an objecting party has no access to affidavits *relied upon in the Regional Director's report.*" (emphasis supplied) *West Coast Liquidators v. NLRB*, 725 F.2d 532, 534 n. 2 (9th Cir.1984).

In this case, the Company clearly had access to copies of its own affidavits; Bell objects instead to the Board's review of the Regional Director's report without review of the *Union's* affidavits, which the Company alleges were "relied upon" by the regional director. It seems clear, however, that the Board in its review relied only upon the evidence proffered by the Company itself, stating: "In adopting the Regional Director's recommendations to dismiss Objections 2, 3, and 4, we rely solely on the affidavits the Employer submitted and on the Employer's concession concerning Objection 4 that there is no evidence of tampering with the ballot box." Thus any "reliance" on Union evidence by the regional director was disregarded by the Board, and any consequent error which

might have resulted from the failure of the regional director to forward that evidence to the Board was rendered harmless by the Board's limited review.

**3.** Given the recognized burden on the objecting party to substantiate its objections in the election context, however, it seems clear that all of the evidence needed to evaluate whether that burden was met in this case was included in the record in the form of the objections and affidavits that Bell submitted to the Regional Director and the Board. *See* note 2, *supra.*

**4.** Because we find any potential error to be harmless in this case, we do not deem it appropriate here to determine whether the Board's application of the relevant regulation defining the record on review, 29 C.F.R. 102.69(g) as amended 1981, should be disapproved in light of *West Coast Liquidators v. NLRB*, 725 F.2d 532, 534 n. 2 (9th Cir.1984). That consideration may more aptly be the concern for another day.

union hall, they were informed that they would have to sign authorization cards before being admitted.

Construing such well pleaded factual assertions most favorably to the Company, we assume that the conduct alleged actually occurred.[5] Bell argues then that the principles of *NLRB v. Savair Manufacturing Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973) apply to render the Union's alleged conduct objectionable. In *Savair*, the Supreme Court ruled that a union election victory must be set aside when a waiver of initiation fees was conditioned upon signing union "recognition slips" prior to the election, because the substantial monetary benefit offered might induce employees who did not in fact support the union to sign a card, thus allowing the union to "buy endorsements and paint a false portrait of employee support during its election campaign" *Id.* at 277, 94 S.Ct. at 499.

■ It is clear to us, however, that attendance at a union meeting is not a benefit equivalent to the waiver of initiation fees. As the Board suggested in dismissing the objection, an employee who does not want to join a union has no incentive to sign an authorization card just to hear what is said at a union meeting about an organizing campaign. That information is readily available from other sources, including union literature, the union organizer who is conducting the campaign at the plant, and pro-union employees. Nor is an employee who does not attend a union's organizing meetings prejudiced in any way

if the union is ultimately chosen as the employees' bargaining representative.

Even assuming the events to have occurred as described by Bell, we conclude that the Company has failed to create a substantial issue of material fact which would warrant a hearing on this objection.

*Objection 3*

In its third objection, the Company alleged that at an election-eve meeting at the Union's offices and hall, the Union discussed the election, told the employees how to vote, told them that union initiation fees would be waived, and told them what benefits they would receive if they voted for the Union. Under the rule of *Peerless Plywood Co.*, 107 NLRB 427 (1953) such election eve meetings are permitted "so long as they are conducted on the employees' own time and attendance is voluntary." *U.S. Ecology, Inc. v. NLRB*, 772 F.2d 1478, 1481–82 (9th Cir.1985). In *NLRB v. Belcor, Inc.*, 652 F.2d 856 (9th Cir.1981) a union bulletin announcing a campaign meeting within 24 hours which had the words "Mandatory Attendance" printed on it was held by the court to raise a factual issue requiring a hearing as to whether attendance was perceived to be mandatory. *Id.* at 861. Bell argues that there was a genuine issue of material fact as to whether attendance was perceived to be mandatory here as well.

The evidence submitted by Bell to establish this objection included only a sworn declaration by one Renee Dougherty stating that the Union had held a meeting on the evening prior to the election and had

---

5. Bell presented no direct evidence of the conduct complained of, although the Union did present direct evidence that employees were not required to sign authorization cards.

   The regional director found first that the conduct complained of by the Company had not occurred, "in view of the fact that the only evidence in support of this objection is heresay [sic] and the allegations of the objection are denied by direct evidence...." Although Bell asserts that it is prejudiced by the failure of the regional director to forward this union-submitted evidence on which he is alleged to have "relied," the Company's argument is directly refuted by the director's further finding that even "assuming that the allegations of the objection

are correct, [he would find] the conduct unobjectionable." He stated in his report:
> There is no evidence that the [Union] offered employees any inducements or promises of benefits to secure their signatures on authorization cards, and employees' signatures on such cards do not obligate them to vote for [the Union] in a secret ballot election.

In its review of the regional director's recommendation, the Board credited only this latter finding, stating that Bell's objection was to be dismissed solely because the activities alleged did not form a basis for overturning an election, rather than, as the Regional Director alternatively found, because the allegations were hearsay.

handed out a bulletin in advance of the meeting in which employees were asked to come to the meeting and told that "it is very important you be there!!! " Dougherty's affidavit termed this "a point that the individuals handing out the bulletin also stressed, apparently implying that a failure to attend might result in certain unstated adverse consequences."

■ Apparently relying on Dougherty's characterization of the manner in which the leaflet was distributed to establish an issue of material fact, Bell contends that Ms. Dougherty's affidavit here, like the bulletin in *Belcor*, raised the question whether attendance might have been perceived to be mandatory.[6] This objection is also without merit. The statements of those who handed out the leaflets—"it is very important that you be there!!!"—are clearly unobjectionable. And Dougherty's impression that these statements *"apparently* impl[ied] that a failure to attend *might* result in certain unstated adverse consequences" (emphasis supplied) is mere speculation and cannot be considered either an offer of proof or evidence of any genuine threat.

*Objection 4*

Bell's fourth objection alleged that on the day of the election, the NLRB agent supervising the election left the ballot box unattended for a period of approximately five minutes before the start of the afternoon election session. During this period, the Union's election observers were alone with the ballot box. Bell admitted, however, that there was no physical evidence of tampering with the ballot box.

The Company nonetheless argues that the principles of *Paprikas Fono*, 273 NLRB No. 86 (1984), require the Board to set aside an election when even the "appearance of irregularity" has been alleged, in order to preserve the integrity of the election procedure itself.

■ This contention is simply incorrect. The Board and the courts have long recognized that "because of the great variety of conditions in which elections may be conducted, ... suggested [balloting] proce-

dures cannot always in practice be met to the letter." *Polymers, Inc.* 170 NLRB 333, 335 (1968), 174 NLRB 282 (1969) (on reconsideration), enf'd 414 F.2d 999 (2nd Cir.), *cert. denied* 396 U.S. 1010, 90 S.Ct. 570, 24 L.Ed.2d 502 (1970). When it is clear that "desirable election standards" have been maintained, the election will be upheld. *Polymers, Inc. v. NLRB*, 414 F.2d 999 (2nd Cir.1969). The mere possibility of irregularity of a representation election does not preclude certification *Id.* at 1002; an election will be set aside only if an examination of all the relevant facts surrounding the balloting raises a "reasonable doubt as to the fairness and validity of the election." *Paprikas Fono*, 273 NLRB, quoting *Polymers*, 273 NLRB at 1328; *see also Polymers*, 414 F.2d at 1004.

In *Paprikas Fono*, relied upon by the company, the "appearance of irregularity" was supported by the real possibility that the ballot box could have been tampered with. In that case the Board agent erroneously failed to put challenged ballots from an election into an envelope in the presence of the parties and to have the envelope sealed with tape over the parties' signatures. Instead, when he returned to the Board's offices, the agent put the challenged ballots into an envelope, sealing and signing it himself. When the employer filed an objection to the Board agent's handling of the challenged ballots during the election, the Regional Office compounded the earlier error by opening the envelope outside the presence of any of the parties. Under these circumstances, the Board found that the manner in which the election was conducted "raise[d] a 'reasonable doubt as to the fairness and validity of the election' under the standard set forth in *Polymers Inc.*" 2373 NLRB at 1328.

■ Such is not the case here. Uncontested facts disclosed in the investigation conducted by the Regional Director indicate that the ballot box was sealed with tape after the morning session, and signed across the tape on all four sides of the box and in each corner; then transparent tape

---

6. All of Dougherty's other allegations about the Union's voting instructions, the Union's discus-

sion of dues, etc. involve permissible campaign activities.

was placed across all the signatures, making it virtually impossible to open the box without leaving evidence of tampering. The possibility that during the Board agent's absence union observers could have obtained blank ballots, marked them for the Union, opened the box, removed some or all of the ballots, replaced them with counterfeits and resealed the box without leaving any evidence of tampering—all in the space of five minutes—is so remote as to be fanciful. It certainly does not raise a "reasonable doubt" as to the fairness and validity of the election. *See Polymers,* 414 F.2d 999 (where NLRB agent left ballot box in locked station wagon, box was sealed with masking tape instead of gummed paper, names were signed on tape without continuation onto surface of ballot box, circumstances gave rise only to remote possibility of irregularity, and NLRB decision to certify union was no abuse of discretion.)

### Conclusion

In sum, our review indicates that all of the Company's objections are without merit, if not in fact frivolously interposed. It is abundantly clear that the employees' election of Union representation should be honored. Accordingly, the Board's order to bargain is ENFORCED.

KENNEDY, Circuit Judge, concurring:

I concur in the judgment, with one observation. The goal of an organizing campaign, achieved through free and vigorous debate, is to make an informed choice possible for employees. *See Linn v. United Plant Guard Workers,* 383 U.S. 53, 62, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1966); *NLRB v. Lenkurt Elec. Co.,* 438 F.2d 1102, 1108 (9th Cir.1978). Given this goal, it is somewhat odd to require employees to sign authorization cards before hearing the Union's pitch. The company, however, argues only that the principles of *NLRB v. Savair Mfg. Co.,* 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973), have been violated, and that is not the case.

LOVELL, District Judge, concurring:

I concur in the result reached by Judge Poole, and I agree with Judge Kennedy's

opinion. However, our opinions ought not be read to endorse the NLRB's review procedures, which are inherently suspect.

On three separate occasions in three different cases during a recent three year period this court expressed its disagreement with the NLRB's review procedures.

First, in *NLRB v. Consolidated Liberty, Inc.,* 672 F.2d 788, 789 (9th Cir.1982), the Board's failure to review the entire record before the Regional Director was held to lead to "rubber stamp" review raising serious due process problems. Next, in *NLRB v. Advanced Systems, Inc.,* 681 F.2d 570, 573–74 (9th Cir.1982), we held that the Regional Director must transmit, as part of the record, any materials he relied on in his report, regardless of the source. Most recently, in *West Coast Liquidators, Inc.,* 725 F.2d 532 (9th Cir.1984) this court, reviewing the Board's revised rule, held that it was error for the Board to fail to review the entire record relied upon by the Regional Director, but that the court will not deny enforcement and order remand where the error is harmless. That decision reaffirmed the principle that proper review, both administrative and judicial, requires an adequate record.

The Board's response in this case is to ask us to overrule *West Coast Liquidators.* I would decline to do so.

We order enforcement here because the record fails to disclose that the Employer established a prima facie case of objectionable conduct below, and any error, therefore, was harmless. This result is consistent with *West Coast Liquidators.*

This court will again be squarely confronted with the apparent deficiencies in the Board's review procedures under *West Coast Liquidators, Advanced Systems,* and *Consolidated Liberty.* I would reaffirm those cases and disapprove the Board's review procedures as part of our decision in this case.