978 F.2d 1265
 148 L.R.R.M. (BNA) 2319
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LANCASTER COMMUNITY HOSPITAL, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and Hospital and Service Employees Union, Local 399, Intervenor.
NATIONAL LABOR RELATIONS BOARD, Cross-Petitioner,
and Hospital and Service Employees Union, Local 399, Intervenor,
v.
LANCASTER COMMUNITY HOSPITAL, Cross-Respondent,
 Nos. 91-70397, 91-70485.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 9, 1992.
 Decided Nov. 4, 1992.
 
 1
 Before D.W. NELSON and REINHARDT Circuit Judges, and CALLISTER* District Court Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner and Cross-respondent Lancaster Community Hospital petitions this court for review of the National Labor Relations Board's order finding that Lancaster had committed an unfair labor practice by refusing to bargain with the Hospital and Services Employees Union, Local 399 and instructing Lancaster to proceed to bargain with that union. The NLRB has filed a cross-petition requesting enforcement of its order and asking us to impose sanctions upon Lancaster for bringing a frivolous appeal.
 
 
 4
 The principal question is whether the Board acted within its discretion when it certified the Union as the sole bargaining agent for the hospital employees, over Lancaster's objection that the union should not be certified since the integrity of the representation election process had been breached.
 
 
 5
 For the reasons set forth below, we find that the NLRB acted within its discretion when it certified the union. Therefore, the NLRB's petition for enforcement is granted.
 
 PROCEDURAL HISTORY
 
 6
 In an election petition filed on December 1, 1988, the Union sought to represent a group of professional and non-professional employees at Lancaster hospital. The election was held on February 24, 1989. At the direction of the Board, the ballots were impounded pending final deposition of certain unfair labor practice charges.
 
 
 7
 On August 8, 1989, the envelopes containing the ballots were opened. Out of approximately 421 eligible voters, 191 cast votes for union representation, 174 cast votes against, and 23 votes were challenged. The Board's disposition of the challenged ballots is not now before the Court.
 
 
 8
 On August 15, 1989, Lancaster filed timely objections to the election. We are concerned with objection 9 where Lancaster alleged that the security of the impounded ballots was violated while in the custody and control of the Board. After conducting an investigation, the Board's Regional Director ordered a hearing to resolve the matter. On August 22, 1990, following a hearing at which evidence was received and testimony was heard, the hearing officer issued a report recommending that the Hospital's objection be overruled and that the union be certified. On January 4, 1991, the Board Chairman issued a supplemental decision adopting the hearing officer's findings and certifying the Union as the employees' exclusive bargaining representative.
 
 
 9
 The Union proceeded to ask Lancaster to bargain. Lancaster refused and the Union filed an unfair labor practice charge. The General Counsel for the NLRB then filed a motion for summary judgment which Lancaster opposed on the ground that the certification of the Union was contrary to law.
 
 
 10
 On June 12, 1991, the Board granted the General Counsel's motion for summary judgment. The Board determined that the issue of the integrity of the election process had already been litigated and that Lancaster failed to present any new evidence or special circumstance that would warrant re-litigation of the matter. In addition, the Board found that Lancaster's refusal to bargain constituted an unfair labor practice in violation of Section 8(a)(5) and (1) of the National Labor Relations Act (Act), 29 U.S.C. §§ 158(a)(1) and (5). The Board ordered Lancaster to bargain with the Union.
 
 STANDARD OF REVIEW
 
 11
 Lancaster has properly preserved the issue of the propriety of the Union's certification for appellate review. Because election certifications are not enforceable final orders, AFL. v. NLRB, 308 U.S. 401, (1940), an employer challenging election irregularities in the Ninth Circuit must present its objections both in the certification proceeding and the unfair labor practice proceeding to preserve the issue for appellate review. NLRB v. Belcor, Inc., 652 F.2d 856, 858 n. 2 (9th Cir.1981).
 
 
 12
 We conduct a limited review of the Board's underlying decision. NLRB v. Cal-Western Transport, 870 F.2d 1481, 1483 (9th Cir.1989). The Board has broad discretion to determine the propriety of the union representation election process. Micronesian Telecommunications Corp. v. NLRB, 820 F.2d 1097, 1101 (9th Cir.1987). Therefore, we will not overturn a Board decision to certify a union unless it has abused its discretion. Cal-Western Transport, 870 F.2d at 1484. The Board's order must be enforced if it correctly applied the law and if its findings of fact are supported by substantial evidence on the record as a whole. Id.
 
 DISCUSSION
 
 13
 Lancaster challenged the certification of the Union based on its allegation that the security of the impounded ballots was violated while in the custody and control of the NLRB. Specifically, Lancaster alleged that while in the custody of the NLRB at least one challenged ballot was tampered with and the seals on at least three of the envelopes containing the ballots and the challenged ballots were broken. In addition, Lancaster alleged that the log of the impounded ballots had been altered.
 
 
 14
 The Board engaged in a careful consideration of the testimony and the documents introduced at the certification hearing before finding that there was no evidence of tampering with the ballots during the time they were in the custody of the NLRB. In regard to the allegation that the seals on several ballot envelopes had been purposefully broken, the hearing officer noted that Lancaster offered no evidence to contradict Susan Seeck's testimony that the tape sealing the envelopes had simply become loose and brittle with the passage of time. The hearing officer also found that the signatures placed across the envelope seals when the ballots were impounded were still properly aligned, even though the tape had become loose in some areas (ER:070). Again, the hearing officer noted that this evidence was not disputed. Finally, although gaps appeared where the flaps joined the backs of the envelopes, the hearing officer found that none of the gaps were larger than 3 to 3 1/2 inches. He found that no gap was large enough for ballots to be removed or inserted into the envelopes (ER: 075).
 
 
 15
 In regard to the allegation that one of the ballots had been tampered with, the hearing officer found that the stub normally attached to a ballot was missing from one ballot. However, the hearing officer noted that there was no evidence presented that any of the parties had access to the envelopes which remained at all times in the custody of Board personnel who had no interest in the outcome of the election (Id.). The hearing officer also found that, given the small size of the gap in the envelope, it would have been impossible to have taken the challenged envelope out, torn off the stub, and returned the ballot to the container envelope (ER: 076). The court took account of the fact that the ballot with the missing stub was not counted and was deemed to be void.
 
 
 16
 In regard to the incorrect log entries, the court concluded that these were typographical errors. While the log indicated that "6" rather than "7" envelopes were deposited in the safe prior to the time the ballots were counted, the hearing officer noted that the testimony was uncontradicted that seven envelopes were deposited and removed from the safe. In addition, although the log indicated that the envelopes had been placed in the safe on "2-4-89," the Board noted that this was plainly incorrect since the election was held on February 24, 1989. Indeed, rather than providing evidence of a security breach, the Board concluded that the existence of the errors in the log was evidence that the log was genuine and had not been altered after the fact (ER:069).
 
 
 17
 As the hearing officer stated, when reviewing objections to the integrity of the election process, the Board is to determine whether a reasonable possibility of irregularity inhered in the conduct of the election. Trico Products Corp, 238 NLRB 380 (1978) (ER:072). A "mere possibility of irregularity of a representation election does not preclude certification." Bell Foundry Co. v. NLRB, 827 F.2d 1340, 1346 (9th Cir.1987). Therefore, an election will be set aside only if an examination of all the relevant facts surrounding the election raises "a reasonable doubt as to the fairness and the validity of the election."
 
 
 18
 Based on the above factual findings, the hearing officer determined that Lancaster had not met its burden of raising a reasonable doubt about whether there had been a breach of security in the handling of the ballots after the election and before they were counted.
 
 CONCLUSION
 
 19
 The Board correctly applied the law, and substantial evidence on the record supports the Board's finding of fact. ACCORDINGLY, we hold that the Board acted within its discretion in certifying the Union. The NLRB's application for enforcement of its order is hereby GRANTED. The NLRB's request for sanctions is DENIED.
 
 
 
 *
 The Honorable Marion J. Callister, United States District Judge for Idaho sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3