89 F.3d 845
 158 L.R.R.M. (BNA) 2256
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MERCHANTS TRANSPORTATION OF CALIFORNIA, INC.,
Petitioner-Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner.
General Teamsters, Auto Truck Drivers, Car Haulers and
Heloers, Local No. 70,
Respondent-Cross-Petitioner-Intervenor.
 Nos. 94-70488, 94-70905.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 4, 1995.
Decided June 24, 1996.
 
 1
 Before: WALLACE, Chief Judge, THOMPSON, Circuit Judge, and THOMPSON, District Judge*
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner and Cross-Respondent, Merchants Transportation of California, Inc. ("Merchants"), petitioned for review of Respondent and Cross-Petitioner's, the National Labor Relations Board ("Board"), Decision and Order ("Order") directing Merchants to cease and desist from conduct that violated sections 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(1) and (5). The Order directs Merchants to bargain upon request, and embody any understanding reached in a signed agreement with the Brotherhood of Teamsters, Auto Truck Drivers, Car Haulers and Helpers, Local No. 70, International Brotherhood of Teamsters, AFL-CIO ("Union") as the exclusive representative of a unit of all line drivers, city drivers, dockworkers, mechanics and plant clerical employees ("employees") employed by Merchants at its San Leandro facility. Merchants asserts that the Board's failure to hold an evidentiary hearing on its objections to the election, failure to count challenged ballots, and determination that the Union was properly certified as the bargaining unit for the employees was an abuse of discretion and not supported by substantial evidence.
 
 FACTUAL BACKGROUND
 
 4
 Merchants operates a statewide trucking business with facilities in several cities, including the San Leandro facility ("Facility"). In September of 1993, a petition was filed by the Union to represent the employees at the Facility. On December 16 and 17, 1993, a secret ballot election was held. Twenty-five ballots were cast, twelve for the Union, eleven against the Union. Two ballots were challenged and not counted.
 
 
 5
 Two weeks prior to the election, an unidentified female union representative approached an anti-union employee, Mark Suitts ("Suitts"). According to Suitts, the unidentified female accused him of being paid off by Merchants for his vote and repeatedly swore at him. Suitts also stated that he returned to his car later that day and found one of his tires slashed. Suitts did not know who was responsible for the slashed tire.
 
 
 6
 On the first day of the elections there was an altercation between Suitts and Bill Hutchinson ("Hutchinson"), who was an active union supporter. As Suitts walked into the dock area, passing Hutchinson and Al Salamat ("Salamat"), Hutchinson stated that Suitts now had "two enemies." Apparently one of Hutchinson's tires had been deflated and Hutchinson believed that Suitts was responsible. Suitts tried to explain to Hutchinson that he had not deflated the tire. Hutchinson became angry, yelled at Suitts, shoved him and eventually took a swing at Suitts, catching him on the end of his nose.
 
 
 7
 Also, on the second election day, Hutchinson "noted from the election eligibility list" that two line drivers and three dockworkers had not yet voted. Hutchinson told another employee, Mike Walton ("Walton") to tell the dockworkers to get in and vote. Walton apparently told at least one dockworker to go and vote.
 
 
 8
 Based on these facts, Merchants argues that the "laboratory conditions" necessary for a fair union election were destroyed and the Board abused its discretion in not conducting a hearing. Additionally, Merchants argues that the Board erred in sustaining the challenge to the two contested votes.
 
 DISCUSSION
 A. Standard of Review
 
 9
 The Board's decisions will be upheld on appeal if its findings of fact are supported by substantial evidence and if the agency correctly applied the law. Retlaw Broadcasting Co. v. NLRB, 53 F.3d 1002, 1005 (9th Cir.1995). The "substantial evidence" standard requires that this court defer to the Board's choice between two conflicting views, even if the court would justifiably have made a different choice. Id.
 
 B. Agency
 
 10
 Much of this case turns on whether Hutchinson was an agent of the Union or just an enthusiastic supporter of the Union. If Hutchinson was an agent of the Union the "question is whether the coercive conduct so influenced potential voters that a free choice was impossible." Advanced Systems, 681 F.2d at 575, citing NLRB v. Sauk Valley Manufacturing Co., 486 F.2d 1127, 1131 n. 5 (9th Cir.1973). If Hutchinson was a third-party enthusiastic union supporter, then the election will only be set aside if his conduct was "so aggravated that a free expression of choice of representation [was] impossible." NLRB v. Aaron Brothers Corp., 563 F.2d 409, 412 (9th Cir.1977). Accordingly, if Hutchinson was an agent, his actions need only to have "influenced" the election, rather than the third-party's higher standard of "aggravated" the election in order for the election to be set aside.
 
 
 11
 Under the NLRA, common law agency principles govern the Union's responsibility for the actions of its officers and members. NLRB v. Advanced Systems, Inc., 681 F.2d 570, 576 (9th Cir.1982). Accordingly, "implied or apparent authority is sufficient to establish agency" under the NLRA. Id., citing Hasbrouck v. Sheet Metal Workers Local 232, 586 F.2d 691, 693 (9th Cir.1978).
 
 
 12
 Merchants argues that Hutchinson was an agent of the Union. As evidence, Merchants only submitted the declaration of the aggrieved Suitts. In his declaration, Suitts stated that "Hutchinson is viewed by most employees as the lead union supporter at the Oakland Terminal." Additionally, Suitts claimed that the Union "told employees that if they were not available to answer questions about the union, they should ask Hutchinson." Finally, Suitts also stated that prior to the election Hutchinson "frequently told employees about what the union could do for them."
 
 
 13
 The Board accepted as true the statements in Suitts declaration, yet concluded that Hutchinson was not a "general agent" of the Union. Citing Advanced Products Corp., 304 N.L.R.B. 436 (1991), the Board found that activities like "discussing the union with other employees, answering their questions, distributing union literature, keeping the union informed of events occurring in the plant, and serving as the union's election observer" are not sufficient to demonstrate general agency.
 
 
 14
 The Board correctly concluded that Hutchinson was not an agent of the Union. Just one employee's belief that Hutchinson was an agent of the Union, without more, is not sufficient to demonstrate agency. Even taking Suitts' statements about Hutchinson's activities as true, these acts do not confer agency status upon Hutchinson. There is no evidence that Hutchinson ever did anything more than tell the employees what [the Union] could do for them." Additionally, there is no evidence that the Union either trained Hutchinson or stated publicly or in print that Hutchinson was an agent. At most Hutchinson's actions indicate that he was an enthusiastic union supporter.
 
 C. Evidentiary Hearing
 
 15
 Merchants asserts that Hutchinson's activities destroyed the "laboratory conditions" necessary for a fair election, that the Board erred in not holding an evidentiary hearing, and that the election should be set aside.
 
 
 16
 The Board's decision not to grant an evidentiary hearing on election objections is reviewed for abuse of discretion. Bell Foundry v. NLRB, 872 F.2d 1340, 1344 (9th Cir.1987). To obtain a hearing, the complaining party must make a prima facie showing of substantial and material factual issues that would, if true, warrant setting aside the election. NLRB v. Advanced Systems, Inc., 681 F.2d 570, 572 (9th Cir.1982), citing Spring City Knitting Co. v. NLRB, 647 F.2d 1011, 1017 (9th Cir.1981). Likewise, a hearing "is unnecessary where if all the facts contended for by the objecting party [are] credited, no ground is shown which would warrant setting aside the election." Aaron Brothers Corp., 563 F.2d at 411, quoting NLRB v. Smith Industries, 403 F.2d 889, 892 (5th Cir.1968).
 
 
 17
 Additionally, a Board-supervised representation election is presumptively valid. Valley Rock Products v. NLRB, 590 F.2d 300, 302 (9th Cir.1979). Moreover, courts are especially hesitant to set aside an election when the activity of third parties is alleged to have rendered an election unfair. NLRB v. Health Tec Division, 566 F.2d 1367, 1372 (9th Cir.), cert. denied, 439 U.S. 832 (1978). As an enthusiastic union supporter, Hutchinson's activities must have been "so aggravated that a free expression of choice of representation [was] impossible" in order for the election to be set aside. Aaron Brothers Corp., 563 F.2d at 412.
 
 
 18
 Merchants argues the elections should be set aside for several reasons. First, Merchants claims that the tire slashing and the altercation between Hutchinson and Suitts upset the conditions necessary for a fair election. The Board concluded that these acts did not warrant setting aside of the election. The Board's conclusion was based on the fact that there was no evidence of who was responsible for the tire slashing or that the tire slashing was related to the elections at all. There was no evidence that there were threats of property damage made to any employees because of the election. In addition, there was no evidence that the altercation between Suitts and Hutchinson was related to the election, but rather was of a personal nature, a dispute over the deflation of Hutchinson's tire. The Board concluded that this conduct did not meet the third-party standard set out in Westwood Horizon Hotel, 270 N.L.R.B. 802 (1988). Based on the record, the Board did not err in finding that the tire slashing and altercation between Hutchinson and Suitts was not "so aggravated" as to render impossible a free choice of representation. See DID Building Services v. NLRB, 915 F.2d 490, 498 (9th Cir.1990).
 
 
 19
 Second, Merchants argues that Hutchinson, as the Union's election observer, engaged in prohibited "electioneering" when he told Walton to "get those dockworkers in here to vote." Apparently, Walton went to a dockworker and stated, "they are waiting on you" and "get in there and vote." The Board found Hutchinson's brief remark did not violate Milchem's proscription against electioneering. See Milchem, Inc., 170 N.L.R.B. 362 (1968) (which prohibits "prolonged conversation between representatives of any party to the election and voters waiting to cast ballots"). In similar situations, the Board has found that the conduct of a union observer summoning employees to vote did not warrant setting aside the election. See Bonanza Aluminum Corp., 300 N.L.R.B. 585 (1990). Hutchinson's brief comment to summon the dockworker's to vote did not violate Milchem's proscription against lengthy conversations or warrant setting aside the election. See NLRB v. Vista Hill Foundation, 639 F.2d 479, 484 (9th Cir.1979).
 
 
 20
 Finally, Merchants argues that Hutchinson kept a mental list of those who had voted in the election. No one is allowed to maintain a list of eligible voters, other than the official eligibility list, at the polling place during an election. See St. Elizabeth Community Hosp. v. NLRB, 708 F.2d 1436, 1443 (9th Cir.1983); Piggly-Wiggly # 011, 168 N.L.R.B. 792 (1967). The Board correctly found that there was "no evidence, or even the contention, that Hutchinson maintained" a prohibited list of eligible voters. In fact, an employee George Jacobs stated in his declaration that Hutchinson "noted from the election eligibility list" that two dockworkers had not yet voted.
 
 
 21
 We conclude the Board did not abuse its discretion in refusing to hold an evidentiary hearing.
 
 D. Challenged Ballots
 
 22
 Merchants argues that the Board erred in sustaining the challenges to the ballots of Theresa Verduzco ("Verduzco") and Amy Ankrum ("Ankrum"). Merchants asserts that voter eligibility of Verduzco and Ankrum was similar to that of Salamat, whose ballot was counted. However, Merchants neglects to acknowledge an important difference between the positions of the three employees.
 
 
 23
 All three employees were not on the original voter eligibility list because they each were not on the Merchants' payroll before the October 31, 1993 cutoff date. However, prior to the election the Union demanded that Salamat be added to the eligibility list because he had worked for Merchants until October 20, 1993 and was scheduled to return to work on November 15, 1993. Merchants agreed to the addition of Salamat to the eligibility list and Salamat's name was placed on the official eligibility list. Conversely, Verduzco and Ankrum did not begin working for Merchants until November 1 and 8, respectively. Moreover, there is no evidence of an agreement between the Union and Merchants to add these two employees to the official eligibility list. Since neither Verduzco or Ankrum were similarly situated to Salamat, nor were they on the official eligibility list, the Board properly sustained the challenges to their ballots.
 
 E. Conclusion
 
 24
 Merchants' petition for review is DENIED and the Board's petition for enforcement of its order is GRANTED.
 
 WALLACE, Circuit Judge, dissenting:
 
 25
 I respectfully dissent. I would rule that the National Labor Relations Board (Board) abused its discretion in not holding an evidentiary hearing to consider the objections of Merchants Transportation (Merchants).
 
 
 26
 We review a decision of the Board to hold an evidentiary hearing under an abuse of discretion standard. Bell Foundry Co. v. NLRB, 827 F.2d 1340, 1344 (9th Cir.1987). But if an objecting party makes a prima facie showing demonstrating substantial and material issues of fact which would warrant setting aside the election, the Board must hold a hearing. May Dep't Stores v. NLRB, 707 F.2d 430, 432 (9th Cir.1983) (May Dep't Stores ). I conclude that Merchants made out a sufficient prima facie case and we should remand for an evidentiary hearing. Because I would remand for further proceedings, I would not, as the majority does, reach the issue of whether laboratory conditions were, in fact, destroyed.
 
 
 27
 "To establish a prima facie case [of destruction of laboratory conditions], the objecting party must plead facts which, if true, would support a finding that (1) threats were made, and (2) an employee was actually intimidated by the threats." NLRB v. Valley Bakery, 1 F.3d 769, 772 (9th Cir.1993) (Valley Bakery ) (quotations omitted). Merchants alleges that Hutchinson physically abused and verbal harangued employees. Merchants maintains that his actions constituted threats against anti-union employees and that, according to the declaration of employee Suitts, Hutchinson intimidated employees.
 
 
 28
 Merchants' prima facie case depends largely on whether Hutchinson acted as a union agent. In general, "[i]n assessing the effect of the conduct on the election, less weight is accorded to conduct not attributable to the union or employer." NLRB v. Advanced Systems, 681 F.2d 570, 573 (9th Cir.1982). Third-party misconduct "must be more aggravated" than union agent conduct to overturn an election. NLRB v. Chicago Metallic Corp., 794 F.2d 527, 532 (9th Cir.1986).
 
 
 29
 The evidence supporting the assertion that Hutchinson acted with apparent authority is not compelling, as it consists primarily of Suitts's declaration which alleged that the "union told employees that if they were not available to answer questions about the union, they should ask Hutchinson. During the period of time prior to the election, Hutchinson frequently told employees about what the union could do for them if voted in." Hutchinson also served as an election observer. The Board, responding to these allegations, found that Hutchinson's activities as a whole--distributing union literature, informing the union, and serving as election observer--did not demonstrate general agency.
 
 
 30
 As a legal matter, the Board may be, in the end, correct, but in determining whether a prima facie case has been made out to hold a hearing, the Board must view the allegations in a way most favorable to the objecting party. This the Board did not do. The Board was to discover whether Hutchinson had "apparent authority." Looking at the facts most favorably, Merchants' allegations certainly could support a finding of apparent authority. Further, an inquiry into apparent authority requires "issues related to a person's state of mind." NLRB v. West Coast Liquidators, 725 F.2d 532, 536 n. 4 (9th Cir.1984). These issues "ordinarily cannot be resolved by an ex parte investigation." Id.
 
 
 31
 Thus, I would hold that Merchants made out a possible case that Hutchinson acted with apparent authority. As a union agent, Hutchinson would be held to a higher standard, and the facts which Merchants alleged, if true, would constitute a prima facie case of destruction of laboratory conditions. See Valley Rock Products v. NLRB, 590 F.2d 300 (9th Cir.1979) (ordering the Board to hold an evidentiary hearing in case where union agent assaulted company leaders). Merchants' allegations show prima facie that threats were made, and that these threats could have affected employees' decisions.
 
 
 32
 Practical considerations reinforce this conclusion. An employer, who does not wish to be "accused of coercive interrogation of employees," has "access to very limited discovery." Valley Bakery, 1 F.3d at 772 (quotations omitted). "It is, therefore, unreasonable to expect an employer to document its objections with the kind of evidence that realistically could be uncovered only by subpoena and an adversarial hearing." Id. (quotations omitted).
 
 
 33
 I would not enforce the Board's order and would remand for further proceedings. See May Dep't Stores, 707 F.2d 430.
 
 
 
 *
 Honorable Gordon Thompson, Jr., Senior District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3