**VAN LEER CONTAINERS, INC.,**
Petitioner–Cross–Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner.**

Nos. 90–2390, 90–2671.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1991.

Decided Sept. 24, 1991.

Robert P. Casey, Charles E. Murphy (argued), Dwight Pancottine, Murphy, Smith & Polk, Chicago, Ill., for petitioner-cross-respondent.

Christopher W. Young (argued), Aileen A. Armstrong, N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., Joseph G. Norton, Charlotte N. White, New Orleans, La., for respondent-cross-petitioner.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

Van Leer Containers, Inc. is before us for the second time petitioning for review of the National Labor Relations Board's order that it bargain with the United Steelworkers of America, AFL–CIO. In our earlier opinion we remanded this case for a hearing on Van Leer's objection that during a representation election the Union had coerced and threatened employees. *Van Leer Containers, Inc. v. NLRB*, 841 F.2d 779 (7th Cir.1988). A hearing was held and the Board again overruled Van Leer's objection and ordered it to bargain. We now enforce the Board's order. The background of this case was fully detailed in our earlier opinion so we limit our discussion to the remaining dispute.

## I.

In late 1983, Van Leer purchased its Canton, Mississippi steel drum manufacturing plant from Inland Steel Container Company. Before Inland sold the plant to Van Leer, the Union filed an unfair labor practice charge against Inland alleging that the transfer of its operations to Canton from its New Orleans plant was an unlawful refusal to bargain. With the unfair labor practice charge pending, the Union sought to organize a unit of Van Leer's Canton employees. The possible impact of the In-

land case on the fate of Van Leer's employees became a burning issue during the Union's election campaign at the Canton plant.

On December 4, 1984, the Canton employees voted for the Union. Van Leer filed several objections to the Union's conduct during the election, which the Board overruled without a hearing. Van Leer refused to bargain and the Union responded by filing unfair labor practice charges. The General Counsel issued a complaint and moved for summary judgment. The Board granted the motion and ordered the Company to bargain. Van Leer then petitioned for review in this court.

We concurred with the Board's order overruling all Van Leer's objections but one. That objection charged that the Union had threatened and coerced employees by statements that suggested that the Union would attempt, in the context of the pending unfair labor practice proceeding, to obtain the Canton jobs for Inland's displaced workers if it was not elected to represent the Canton employees. Two incidents prompted this allegation.

Shortly before the election, the Union held an organizing meeting led by its representative, Hubert Coker. Van Leer obtained affidavits from employees who stated that at the meeting Coker commented that the Union would attempt to secure the Canton employees' jobs for the New Orleans employees if it lost the election in Van Leer's plant. Coker denied making such a statement. Three days later, on November 30, Coker sent a letter to all Canton eligible voters which stated in part:

... The Company is trying to scare you with the suit the Steelworkers have against the Company over the moving of the Drum plant to Canton. Let me give you the *facts* and the *law*.

The *Federal law* says the United Steelworkers of America *must* represent its members. Therefore, if a majority of Van Leer employees vote YES on Tuesday, December 4, then the *law requires* the Union to *represent you* in getting you a good decent contract in Canton, Mississippi.

---

[*] The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

If a majority of the employees vote NO and the Judge rules in favor of the Company, then you still have NO union in Canton, Mississippi.

If a majority of the employees vote YES on December 4, 1984, in Canton, Mississippi, and if the Judge rules in favor of the Company in the suit that is pending, then the employees will be free to start negotiations for their own contract in Canton, Mississippi.

If a majority of the employees vote NO on December 4, then we will not be *legally bound* by *law* to represent the employees in Canton, Mississippi. Therefore, our sole obligation will be to the Union members in New Orleans should the Judge rule in the Steelworkers favor.

YOU BE THE JUDGE, and I hope that you will not be mislead by the Company, newspaper or anyone else and will vote for yourselves on Tuesday, December 4, 1984.

We found that Van Leer had established a prima facie case of coercion and denied enforcement of the Board's order. There were significant factual disputes including uncertainty over whether the Union was the source of concern about the Inland case at the Van Leer plant. We determined that the Company was entitled to an evidentiary hearing on its objection and remanded the case to the Board.

On remand, the Administrative Law Judge heard testimony from Coker and seven employees called by Van Leer. One witness testified that at the November 27 union meeting, in response to a question about whether the New Orleans employees could take the Canton jobs, Coker stated that the Canton employees could lose their jobs to the former Inland employees if the Union lost the election. The ALJ, however, credited Coker's testimony that he had not threatened employees, but had responded that the New Orleans employees had been asked whether they wanted to come to Canton and none were interested in the Canton jobs.

The ALJ also determined that concern over whether the displaced Inland workers could come to take the Canton workers' jobs was not instigated by the Union but by

Van Leer. The week before the election, documents related to the Inland case (marked with a date-stamp of the Company's former law firm) were posted on a plant bulletin board which employees then showed to Coker. The ALJ assumed that given the lack of evidence of other incidents where employees had expressed concerns about the Inland case, the issue must have been first raised by the Company.

He found further support for this conclusion from the content of an article which appeared in a local newspaper on November 29. The topic of the article was the relationship between the Inland case and the jobs of the Canton workers and speculated that depending on the outcome of the case, the New Orleans workers could replace the Canton employees. The column quoted Walt Reilly, Van Leer's vice president for human relations, as a source of information about the case. The ALJ concluded that the article must have been inspired by Van Leer and that the Company had deliberately instigated the article to produce uncertainty among employees.

Moreover, he decided that the November 30 letter was sent in response to this article. He credited Coker's testimony that the letter was not drafted as a threat but to explain the "law." Coker also testified that the day after the letter was mailed he had invited former New Orleans Inland employees to attend a Union sponsored fish fry who assured Canton Van Leer employees who were present that the New Orleans employees were not interested in the Canton jobs. The ALJ concluded that although the letter—particularly the fifth paragraph—was "equivocal," Van Leer had not shown it had a significant effect on employees. Two employees said they read paragraph five as a threat that if they did not vote "Yes" the Union would attempt to obtain their jobs for the Inland workers. Two others believed the converse—that by voting *for* the Union they would lose their jobs. Of the three remaining employees who testified, one said that he had not seen the letter, another didn't think the New Orleans employees would come to Canton and the ALJ found that the third gave inclusive testimony.

The Board adopted the ALJ's recommendation that it overrule Van Leer's objection qualified by two footnotes. *Van Leer Containers, Inc.*, 298 NLRB No. 82. Although the Board agreed with the ALJ's finding that the November 30 letter was an answer to the newspaper article, it did not rely on his opinion that Van Leer had inspired the article. The Board also agreed that the letter was not coercive but without taking into account the ALJ's discussion of how the letter affected employees. The Board concluded that the letter was in response to employee questions, not due to any Union conduct, and viewed as a whole, it provided an "unambiguous explanation" of the Union's duty to represent only employees who have chosen the Union as its representative.

We review the Board's order under the substantial evidence standard. *See, e.g., Mosey Manufacturing Co. v. NLRB*, 701 F.2d 610, 615 (7th Cir.1983).

## II.

■ Van Leer has chosen to abandon its allegation that Coker threatened employees at the November 27 meeting and rests its appeal solely on the November 30 letter. Its principal contention is that the Board erred in failing to consider employees' testimony that they viewed the letter as a threat. Van Leer concedes, as it must, that the Board has long held that it is impermissible to consider employee subjective reactions to determine whether employees have been threatened or coerced. *Emerson Electric Co.*, 247 NLRB 1365, 1370 (1980); *Picoma Industries, Inc.*, 296 NLRB No. 69, slip op. at 4 (1989). Nonetheless, the Company argues that this rule only bars examination of how employees reacted to the letter but does allow reliance on testimony addressed to how employees "interpreted" the letter.

But the Board has never made such a distinction—nor do we. There is no relevant difference between questions which probe how employees interpreted the language of the letter and those which ask how the letter affected them. Both the questions "Did you view the letter as a threat?" and "Did you feel threatened?"

ask the employee to give his or her subjective reaction—neither elicits information about objective circumstances of the "who said what to whom" variety. *Cf. NLRB v. Ed. Chandler Ford, Inc.*, 718 F.2d 892, 894 (9th Cir.1983) (noting that subjective evidence is what the employee "understood" and objective evidence consists of what the employee "was told"). Contrary to Van Leer's argument, *Picoma Industries, supra*, does not suggest that the Board has limited its refusal to rely on employee subjective reactions to evidence related to whether certain conduct has affected an employee's vote. Asking an employee whether he or she viewed the letter as a threat is only pertinent to whether the letter could have influenced his or her vote. One question implicitly follows from the other and neither is a permissible basis to find that employees have been coerced. *See Molded Acoustical Products, Inc. v. NLRB*, 815 F.2d 934, 939–40 (3rd Cir.1987), *quoting NLRB v. Clearfield Cheese Co.*, 322 F.2d 89, 94 (3rd Cir.1963) ("Any ... inquiry regarding an employee's subjective understanding of campaign statements leads inevitably to questions about how that understanding affected his vote.").

■ The soundness of the Board's refusal to consider employee subjective reactions is supported by the present record. Even if we accepted Van Leer's argument and considered employees' interpretation of the letter, what useful evidence would we have? The ALJ heard testimony of seven employees, all called by Van Leer, out of eighty-seven who voted in the election. Of these seven, he found that only two employees clearly testified that they read paragraph five of the letter as a threat that if the Union did not win the election it would try to bring the New Orleans employees to Canton. The fact that two employees viewed the letter as a threat is barely probative of the letter's impact. Two other employees drew the opposite conclusion, believing that they would lose their jobs if they voted for the Union. The impracticality or impossibility of questioning all or even most employees after the fact is obvious—nor would this testimony be conclusive of the effect of the letter at

the time of the election. The issue is not whether the letter was actually viewed as a threat but whether, given all the circumstances, it reasonably could have been interpreted as a threat. Employee subjective reactions are properly excluded from this inquiry.

■ Van Leer urges that the Board's refusal to consider employee reactions disregards this court's remand. Van Leer points to our examination of the Board's determination that the letter simply explained the Union's representational duties. *Van Leer*, 841 F.2d at 787. But our conclusion that the Board could not "assume that the employees were aware of these fine distinctions" was not an invitation to consider subjective reactions. The same is true for our statement that a hearing should be held to determine "the impact of the Union's statements on the election." *Id.* n. 6. The purpose of the remand was to hold a hearing to examine the entire context of Van Leer's objection. The employee affidavits and Coker's denials created a factual dispute about whether Coker had in fact threatened Van Leer's employees at the November 27 meeting. The record also did not reveal whether the Union instigated employee concern about the Inland case. Van Leer argues that how employees found out about the New Orleans case is irrelevant to the question of whether the letter was a threat. We disagree. The entire question on remand was whether there was a pattern of coercion by the Union to convince employees that a "Yes" vote would preserve their jobs. The evidence that Van Leer not the Union raised concerns about the Inland case suggests that the Union was not using this issue to coerce employees into voting for the Union.

Van Leer contends that the Board's failure to examine employee reactions has rendered our remand moot. But the record now contains a finding that Coker did not threaten employees at the November 27 meeting—a fact which Van Leer does not dispute on appeal. The ALJ also determined that the letter was not distributed to raise fears among the Canton workers but was a response to a newspaper article which quoted a Van Leer officer. These facts, as well as the dearth of evidence that the Union was the catalyst behind employee concern about the Inland case, were substantial evidence on which the Board could find that the Union had not threatened Van Leer's employees.

■ Van Leer argues further that even if employees' testimony about their interpretation of the letter is not relevant evidence, the Board's finding that the letter was "an unambiguous explanation of the Union's legal obligation to represent only employees who have selected it as their representative" is not supported by the record. The Company contends that the letter is not "unambiguous" but contains an implicit message in paragraph five that the Union would take a different position in the Inland case depending on whether it was elected in Canton or not. Van Leer's reading, however, only makes sense if there is extrinsic evidence that the letter was part of a pattern of threats by the Union. Prior to the hearing, it was possible that Coker had already threatened employees which might have permitted the letter also to be reasonably interpreted as a threat; but absent any evidence of Union threats at the November 27 meeting or at any other time, or Union instigation of employee concerns about the Inland dispute, the letter alone is not threatening. The letter does not contain any threat that employees will lose their jobs if the Union does not win the election nor any other misrepresentation.

Cases setting aside an election due to Union threats of job loss or other forms of coercion do not aid Van Leer. *See Willey's Express, Inc.*, 275 NLRB 631 (1985); *United Broadcasting Company of New York*, 248 NLRB 403 (1980); *A. Rebello Excavating Contractors*, 219 NLRB 329 (1975). Although a threat of job loss may be a proper basis to overturn an election, there was substantial evidence based upon which the Board could find that the Union had made no such threat here. Absent a finding that the letter was coercive, there is no reason to hold a new election. The Board's order to bargain is therefore

Enforced.

ORDER

Dec. 9, 1991.

The respondent-cross-petitioner notes in its petition for rehearing that the court's opinion does not rule explicitly on its motion for supplementation filed on December 14, 1990. By order of January 18, 1991, the court directed that this motion be referred to the panel assigned to hear the case.

To avoid any ambiguity, we now make it clear that the motion is denied. Whatever the merits of the underlying issue, we believe that the motion was made too late in these proceedings. None of the issues set ˆorth in the respondent-cross-petitioner's motion were raised at any point before the Board. Our precedents make it clear that we shall not consider this argument unless it is raised before the Board. *See Van Leer Containers, Inc. v. NLRB*, 841 F.2d 779, 782–83 (7th Cir.1988); *NLRB v. Browning–Ferns Indus. of Louisville, Inc.*, 803 F.2d 345, 350 (7th Cir.1986); *NLRB v. Affiliated Midwest Hosp., Inc.*, 789 F.2d 524, 533 (7th Cir.1986). Nor do we believe, as respondent-cross-petitioner contends, that such a step would be a fruitless gesture. Congress has given the Board primary responsibility for the administration of the statute and its regulations are its attempt to fulfill faithfully that obligation. The Board should have been given the opportunity to interpret its rule— and to attempt to justify it—in the concrete circumstances of this case before the matter was presented to this court.

Accordingly, the petition for rehearing is granted in order to state definitively the disposition of respondent-cross-appellant's earlier motion for supplementation. No other issue was raised in the petition for rehearing. Accordingly, no further action by this court is necessary.