NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

VALLEY BAKERY, INC., Respondent.

No. 91–70352.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1992.

Decided Feb. 24, 1993.

John D. Burgoyne and Collis Suzanne Stocking, N.L.R.B., Washington, DC, for petitioner.

Harry Finkle, Finkle, Davenport & Bartsamian, Fresno, CA, for respondent.

Before: WALLACE, Chief Judge, and CHOY and POOLE, Circuit Judges.

CHOY, Circuit Judge:

The National Labor Relations Board ("NLRB" or "Board") petitions for enforcement of its order that Valley Bakery, Inc. ("Valley" or "Company") bargain with the Bakery, Confectionary & Tobacco Workers International Union, Local No. 85, AFL–CIO ("Union"). Because the Regional Director should have conducted an evidentiary hearing on the Company's claims of election misconduct by the Union, we decline to enforce the Board's order and remand for an evidentiary hearing.

## I. PROCEDURAL & FACTUAL BACKGROUND

On April 19, 1990 the Union filed a petition seeking a representation election at

the Company. On June 6, 1990 the NLRB held an election at which employees cast twelve votes for and nine votes against Union representation.

The Company timely objected to the election alleging, *inter alia,* that the Union or its agents coerced employees to vote in its favor by telling employees that they would be fired if the Union lost the election. In support of these objections Valley submitted the declaration of Nancy Gallagher, its Personnel Director. According to Gallagher, after the election she asked a Valley employee, who characterized herself as a strong Union supporter, why the Company had lost the election. The employee agreed to discuss the election but only on the condition that she not put anything in writing, identify any individuals, or disclose specific activities which she had promised the Union she would keep confidential. The employee told Gallagher that employees were afraid to vote against the Union because they were told that those employees who previously had signed authorization cards would be discharged by Valley if the Union did not win the election. When asked who made the employees believe they would be fired, the employee declined to answer on the ground that to do so would reveal confidences. On the basis of this declaration, the Company requested an evidentiary hearing in order to compel sworn testimony of adverse witnesses.

The NLRB's Acting Regional Director conducted an investigation and issued his Report and Recommendations on Objections on June 28, 1990. He overruled all the Company's objections, including objection three which stated: "The Union coerced employees to cause them to vote for the Union." The Regional Director found that the Gallagher declaration established that threats were made, but that it did not establish that the Union was responsible for making them. Moreover, the Director found that, even assuming that the Union had made the threats, the employees reasonably could be expected to evaluate such remarks as being illogical and unenforceable and, therefore, noncoercive. The Director reached this conclusion because no evidence suggested that Valley

favored the Union or was disposed to discharge employees if the Union *lost* the election. Moreover, the Company did not know who supported the Union before the election because employees signed the authorization cards in confidence.

On July 11, 1990 the Company filed timely exceptions to the Regional Director's Report. In particular, Valley excepted to the Regional Director's failure to find that Valley had presented substantial and material facts which, if true, established a nexus between the threats made and the Union or its agents. It also challenged the Director's conclusions that Company employees necessarily would have rejected the threats and that these threats did not have an adverse effect on the election results. On September 18, 1990 the Board issued its decision adopting the Regional Director's findings and recommendations and certifying the Union as the employees' bargaining agent.

Thereafter, the Company refused to recognize or bargain collectively with the Union. On December 19, 1990 the Union filed a complaint alleging that, by refusing to bargain with the Union or to provide it with requested information that was necessary and relevant to its representation, Valley engaged in unfair labor practices in violation of section 8(a)(5) and (1) of the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. § 158(a)(5) and (1).

In its answer the Company admitted that it refused to bargain with the Union or to recognize it as the exclusive representative of Valley employees. The Company denied, however, both that the Board's certification of the Union was lawful and effective and that Valley's refusal to bargain with the Union was unlawful. The Company's affirmative defense was that the Board's certification of the Union was unlawful and unenforceable due to the Union's alleged threats and coercive conduct.

NLRB General Counsel moved for summary judgment and the case was transferred to the Board. In its opposition to the motion, the Company reiterated the contentions contained in its answer. On

March 15, 1991 the Board issued its Decision and Order ruling that Valley had engaged in unfair labor practices. The Board ordered the Company to bargain with the Union and to furnish it the information it requested. The Board petitioned this court to enforce its order and Valley seeks review of the certification proceeding underlying the Board's order.[1]

## II. DISCUSSION

■ The law governing the issue raised in this case is straightforward. To obtain an evidentiary hearing on an election objection, the objecting party must make a prima facie showing that substantial and material issues of fact exist that would warrant setting aside the election. 29 C.F.R. § 102.69(d); *Bell Foundry Co. v. NLRB*, 827 F.2d 1340, 1344 (9th Cir.1987); *Alson Mfg. Aerospace Div. of Alson Indus. v. NLRB*, 523 F.2d 470, 472 (9th Cir.1975).

■ To establish a prima facie case, the objecting party must plead facts which, if true, would support a finding that (1) threats were made, and (2) an "employee was actually coerced or intimidated" by the threats. *NLRB v. Belcor, Inc.*, 652 F.2d 856, 861 (9th Cir.1981); *see also May Dep't Stores v. NLRB*, 707 F.2d 430, 432 (9th Cir.1983).[2] When the Board refuses to hold an evidentiary hearing, the court "must construe the 'well pleaded factual assertion of the objection most favorably to the excepting party'...." *Bell Foundry Co.*, 827 F.2d at 1344 (quoting *Belcor, Inc.*, 652 F.2d at 859).

■ The Board's decision not to grant an evidentiary hearing on election objections is reviewed for an abuse of discretion. *Bell Foundry Co.*, 827 F.2d at 1344. If the Board abused its discretion in failing to hold a hearing, the employer's refusal to bargain with the Union is not an unfair labor practice. *See NLRB v. West Coast Liquidators, Inc.*, 725 F.2d 532, 534 (9th Cir.1984); *Advanced Systems*, 681 F.2d at 572.

Valley argues that the Regional Director erred in concluding that Gallagher's declaration concerning statements made by a Valley employee did not establish a substantial and material factual issue sufficient to warrant an evidentiary hearing. Valley contends that the employee's refusal to identify those who made the allegedly threatening remarks, when coupled with her invocation of the pledge of confidentiality to the Union, is prima facie evidence that the Union was responsible for the threats.

■ Because this court construes all factual assertions most favorably to the excepting party, *Bell Foundry Co.*, 827 F.2d at 1344, we find that the Company has presented enough evidence to obtain an evidentiary hearing. It is true that to establish a prima facie case, "[t]he proffer [of evidence] may not be conclusory or vague; it must point to specific events and specific people." *Anchor Inns, Inc. v. NLRB*, 644 F.2d 292, 296 (3d Cir.1981). Notably, however, "an employer seeking evidence [to prove election misconduct] has access to very limited discovery; it must proceed in an exceedingly careful manner to avoid being accused of coercive interrogation of employees." *NLRB v. J–Wood/A Tappan Div.*, 720 F.2d 309, 316 (3d Cir.1983) (citation omitted). It is, therefore, "unreasonable to expect an employer to document its objections with the kind of evidence that realistically could be uncovered only by subpoena and an adversarial hearing." *Id.* at 316.[3]

1. This court cannot directly review an election certifying a union. If, however, the company refuses to bargain with the union, that certification may be reviewed in a petition from the ensuing unfair practice proceedings. *NLRB v. Advanced Systems, Inc.*, 681 F.2d 570, 572 n. 1 (9th Cir.1982) (citing *NLRB v. Dick Seidler Enters.*, 666 F.2d 383, 385 n. 1 (9th Cir.1982)). Such is the case here.

2. Where the threats are inherently coercive the employer need only show that they were made to be entitled to an evidentiary hearing. *Spring City Knitting Co. v. NLRB*, 647 F.2d 1011, 1019 (9th Cir.1981).

3. Similarly, in *NLRB v. Nixon Gear, Inc.*, 649 F.2d 906, 913 (2d Cir.1981) (citation omitted) the Second Circuit concluded that: "Firsthand testimony establishing that the Union intended the improper conduct could only come from

The Gallagher declaration is circumstantial evidence that implied threats were made that employees would lose their jobs if they had signed authorization cards and the Union lost the election. The Regional Director found that no nexus existed between the Union and the threats, but the only reasonable inference to draw from the employee's invocation of her pledge of confidentiality is that the Union or its agents made the statements. *Cf. Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989) (all reasonable inferences drawn in favor of nonmoving party in summary judgment motion); *Linn Gear Co. v. NLRB*, 608 F.2d 791, 793 (9th Cir. 1979) (same rule applicable in NLRB proceedings).

The remaining question is whether these statements constituted threats that could have coerced or intimidated employees to vote for the Union. Relying on *Janler Plastic Mold Corp.*, 186 N.L.R.B. 540 (1970), the Regional Director found that a threat that the Company would fire employees if the Union lost the election was illogical and unreasonable, since that result was what the Company wanted. Although the Seventh Circuit denied enforcement of the Board's order in that case, holding that union threats of job loss were more than mere campaign propaganda, *NLRB v. Janler Plastic Mold Corp.*, 82 L.R.R.M. (BNA) 2174 (7th Cir.1972), the Board subsequently upheld the election, determining that the statements at issue were not coercive. *Janler Plastic Mold Corp.*, 208 N.L.R.B. 167 (1974). *Janler*, however, is not on point. The threats alleged in that case were to the effect that "employees would lose their jobs if they did not vote for" the union. *Janler*, 186 N.L.R.B. 540. Such an assertion might indeed be labeled illogical, and Valley's employees could be expected to conclude that the Company would not retaliate against those who aided its cause by voting against the Union. The only

plausible interpretation of the threats alleged in this case, however, was that if the Union lost the election the Company would be free to retaliate against employees who had previously signed union authorization cards by firing them, and that it would in fact do so.

The Regional Director found that this threat, even if a true representation of the employer's intentions, could not be carried out by the Company since employees signed the authorization cards in confidence. One cannot assume, however, that employees knew that the Company could not discover who had signed the cards. The Regional Director did not report any evidence uncovered in his investigation that would support the conclusion that employees could evaluate these statements. Moreover, in *NLRB v. Smith Industries*, 403 F.2d 889, 895 (5th Cir.1968) (citation omitted), the court held that when considering the effect of union misconduct on elections, "subjective as well as objective evidence may be sufficient to overturn the election." *See also NLRB v. Skelly Oil Co.*, 473 F.2d 1079, 1085 n. 14 (8th Cir. 1973); *cf. Navarette v. Enomoto*, 536 F.2d 277, 280 n. 2 (9th Cir.1976) (a "subjective fact generally is not the type of issue that lends itself to resolution, on the basis of affidavits, by summary judgment"), *rev'd on other grounds sub nom., Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). Because the subjective reactions of the employees to the alleged threat are relevant, an evidentiary hearing would help to determine if the statements influenced any votes. *Cf. Janler Plastic Mold Corp.*, 82 LRRM (BNA) at 2174 (evidentiary hearing required where regional director did not advert to alleged threats and inadequate factfinding was conducted).

The Regional Director also overruled the Company's objection because the Union had no power to carry out the threat.[4] The Board cites several cases in its brief where

---

[the employee who allegedly was induced by the Union] or Union officials. But it was impossible for the Company to obtain their testimony because without a hearing an employer must rely upon voluntary cooperation of witnesses to develop its case."

4. At oral argument, the Board relied on its *Midland* rule to support this conclusion, but this was not argued in its brief and we consider it waived. *In re Riverside–Linden Invest. Co.*, 945 F.2d 320, 324 (9th Cir.1991); *Miller v. Fairchild Indus.*, 797 F.2d 727, 738 (9th Cir.1986).

courts have refused to set aside elections when the union had no power to carry out its threats, but those cases are different from this one. In one case, the union won the election by a wide margin and the company was unable to present any evidence that enough votes were influenced to have affected the outcome of the election. *See NLRB v. Sumter Plywood Corp.*, 535 F.2d 917, 924 (5th Cir.1976) (156–77 vote in favor of union), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977). The need for a hearing is particularly great when the election is close. *NLRB v. Chicago Metallic Corp.*, 794 F.2d 527, 532 (9th Cir.1986); *J–Wood*, 720 F.2d at 317; *NLRB v. Bristol Spring Mfg. Co.*, 579 F.2d 704, 707 (2d Cir.1978). In this case, the Union only won by three votes; if two voters were influenced by the statements the election result would have been different.

In another case cited by the Board, there was affirmative evidence in the record demonstrating that the alleged threats did not influence any votes. *NLRB v. Bostik Div., USM Corp.*, 517 F.2d 971, 973 (6th Cir. 1975). Moreover, in *NLRB v. A.G. Pollard Company*, 393 F.2d 239, 241 (1st Cir.1968) the court held that "there were adequate grounds for the director's finding that the assertions were capable of evaluation by the employees...." Finally, in *Olson Rug Company v. NLRB*, 260 F.2d 255 (7th Cir. 1958), the statements were contained in campaign literature, enabling the court to review carefully the statements and conclude that they did not influence the election.[5]

In this case there was no evidence or other adequate grounds to support a conclusion that the statements had no influence on the election. Moreover, since it is unclear exactly what the statements were,[6] it is difficult for the court to evaluate the effect they may have had on any particular voter. None of the cases cited by the Board hold that union statements about an employer's actions over which the union has no power to influence can *never* affect the free choice of employees' votes. In this case, with the evidence the Company was able to present and the reasonable inferences to be drawn from that evidence, the statements may have influenced some employees' votes and, therefore, the Regional Director should have conducted an evidentiary hearing.

The Board's petition for enforcement is DENIED, and the case REMANDED for an evidentiary hearing.

POOLE, Circuit Judge, dissenting:

Because I would hold that the Board did not abuse its discretion by failing to hold an evidentiary hearing, I respectfully dissent.

In support of its claim that the Union coerced Valley employees to vote for it, Valley submitted only a declaration by a supervisor that an employee told her that "employees were told" that anyone who signed an authorization card would be fired if the Union lost the election. The employee refused to identify who made the statements.

In upholding the Union's certification, and in denying Valley an evidentiary hearing, the Regional Director found that threats of retaliatory discharge had been made and that the supervisor's declaration did not establish that the Union made the threats. The Regional Director further found that even if the Union made the threats, employees would evaluate the threat of firing as illogical because (1) there was no evidence that Valley would fire employees and (2) employees signed the authorization cards in confidence and there was no evidence that Valley knew who signed the cards.

The Regional Director did not abuse his discretion by failing to hold an evidentiary hearing on the ground that the employees

---

5. The same applies to the statements at issue in *Machinery Overhaul Company*, 38 LRRM (BNA) 1169 (1956).

6. The Company points out that it attempted to interview employees to discover to whom the statements were made and determine precisely what was said: They were unable to uncover any evidence without the power to compel testimony that would accompany an evidentiary hearing.

would be able to evaluate the threat of firing as illogical. *See Bell Foundry Co. v. NLRB*, 827 F.2d 1340, 1344 (9th Cir.1987) (abuse of discretion standard). Threats of job loss that cannot be carried out do not provide a basis for invalidating the election. *See NLRB v. Chicago Metallic Corp.*, 794 F.2d 527, 532 (9th Cir.1986) ("[c]oercive misconduct only warrants the setting aside of an election when it so influenced potential voters that a free choice [became] impossible") (quotation omitted); *NLRB v. Sumter Plywood Corp.*, 535 F.2d 917, 924 (5th Cir.1976) (union's threat that employees would be fired if the union lost was not objectionable because the threat was unenforceable), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977); *NLRB v. Bostik Div., USM Corp.*, 517 F.2d 971, 973–74 (6th Cir.1975). The election arguably would be invalid, and an evidentiary hearing appropriate, only if the threat "could provoke reasonable concern among employees that they could lose their jobs." *See Van Leer Containers, Inc. v. NLRB*, 841 F.2d 779, 780–81 (7th Cir.1988) (union represented employees of new plant who reasonably could think that employees at closed plant might replace them if the union lost the election); *accord Chicago Metallic Corp.*, 794 F.2d at 532.

The majority nevertheless argues that an evidentiary hearing is appropriate because "there was no evidence or other adequate grounds to support a conclusion that the statements had no influence on the election." The majority has it backwards: to obtain an evidentiary hearing, Valley had the burden of showing "substantial and material factual issues that would, if true, warrant setting aside the election." *Bell Foundry*, 827 F.2d at 1344. Even assuming that the Union made the threats, Valley did not establish a substantial and material issue of fact that the threats were anything but idle or that the employees were incapable of evaluating them.[1]

The majority also argues that regardless of whether the employees objectively could consider the statements regarding discharge to be coercive, Valley is entitled to an evidentiary hearing because the employees' subjective reactions are relevant to whether the statements coerced the employees to vote. I disagree. "[T]he Board has long held that it is impermissible to consider employee subjective reactions to determine whether employees have been threatened or coerced." *Van Leer Containers, Inc. v. NLRB*, 943 F.2d 786, 789 (7th Cir.1991). The rationale behind this rule is that "the impact of a pre-election inducement ... is to be determined by an objective analysis of its words and their context." *Molded Acoustical Prods., Inc. v. NLRB*, 815 F.2d 934, 939 (3rd Cir.), *cert. denied*, 484 U.S. 925, 108 S.Ct. 286, 98 L.Ed.2d 247 (1987). Thus, courts have "regularly refused ... to order evidentiary hearings to permit ... employees to testify concerning their subjective reactions to conduct that allegedly impaired a fair election." *Id.* at 940. Moreover, Valley did not make this argument, and the majority's reliance on it is inappropriate. *See In re Riverside–Linden Invest. Co.*, 945 F.2d 320, 324 (9th Cir.1991); *Miller v. Fairchild Indus.*, 797 F.2d 727, 738 (9th Cir.1986).

In sum, the Board has broad discretion in determining the propriety of the election process. *See Chicago Metallic Corp.*, 794 F.2d at 532. I would uphold the Board's discretionary determination not to hold an evidentiary hearing on the ground that Valley did not present a prima facie case for setting aside the election, and I would grant the Board's petition for enforcement of its order that Valley bargain with the Union. Accordingly, I dissent.

---

1. I also reject the majority's assertion that Valley can obtain evidence only "by subpoena and an adversarial hearing" and thus is entitled to a fishing expedition to obtain evidence. *See Nat-* *ter Mfg. Corp. v. NLRB*, 580 F.2d 948, 952 n. 4 (9th Cir.1978), *cert. denied*, 439 U.S. 1128, 99 S.Ct. 1045, 59 L.Ed.2d 89 (1979).