21 F.3d 1114
 148 L.R.R.M. (BNA) 2319
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
The NATIONAL RESEARCH GROUP, INC., ("NRG"), Respondent.
 No. 92-70701.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 31, 1994.
Decided April 5, 1994.
As Amended May 27, 1994.
 
 Before: BROWNING, BOOCHEVER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board petitions for enforcement of its order against the National Research Group, Inc. The Board found that the employer committed unfair labor practices in failing to bargain with the Communications Workers of America, Local 9000, AFL-CIO. The employer contends the Board should have invalidated the representation election because of a procedural mistake by the acting regional director and should have held an evidentiary hearing on the employer's allegations of third-party misconduct during the election.
 
 
 3
 * The Board did not abuse its discretion in refusing to invalidate the election because of the four-day extension of time. The extension was granted more than six weeks before the election was held. The acting regional director had good reason to grant the extension since the employer disclosed on the seventh day of the original ten-day period that the bargaining unit was 25% larger than estimated by the Board. Finally, the employer learned of the extension on the twelfth day of the fourteen-day period, and therefore had twelve of the fourteen days in which to campaign against the Union. Under the circumstances, the Board's grant of the extension without first notifying the employer would not give rise to an appearance of partiality, and it is difficult to see how ordering a new election could remedy whatever injury was not cured during the six-week period following the showing of interest.
 
 II
 
 4
 To obtain an evidentiary hearing on an election objection, the objecting party must make a prima facie showing that substantial and material issues of fact exist that would warrant setting aside the election. NLRB v. Valley Bakery, Inc., 1 F.3d 769, 771-72 (9th Cir.1993). The Board's decision not to grant a hearing is reviewed for an abuse of discretion. Id. at 772.
 
 
 5
 The employer's request for an evidentiary hearing was based on abusive telephone messages left on the answering machine of a pro-Union group. These messages included death threats and were known to approximately 50 employees, more than enough to affect the outcome of the representation election. We think the Board should have conducted an evidentiary hearing on the issue of third-party misconduct.
 
 
 6
 Accordingly, the Board's petition for enforcement is dismissed without prejudice to renew upon the conclusion of an evidentiary hearing on the allegations of third-party misconduct.
 
 
 7
 DISMISSED.
 
 
 8
 KLEINFELD, Circuit Judge, concurring in part and dissenting in part:
 
 
 9
 I concur in Part II, but dissent from Part I.
 
 
 10
 The majority and I agree that the four day extension was a permissible exercise of discretion. The problem was not that it was granted, but that it was done secretly based upon ex parte communication. The Acting Regional Director accepted the Union's entreaty secretly, without allowing the company to be heard, and granted the extension secretly, without telling the company. It was only by chance, after the ten day period had ended, that the company's lawyer found out that the period had been extended. He immediately protested, but could not get the Acting Regional Director even to put his decision in the form of an appealable order so that the company could get it reviewed at a higher level within the NLRB. The decision was fine, but the way it was made and kept secret was wrong. It violated the Athbro rule.
 
 
 11
 Athbro Precision Engineering Corp., 166 N.L.R.B. 966 (1967), holds that an NLRB agent's drinking a beer with the union representative between polling periods violates "integrity and neutrality" and "tends to destroy confidence in the Board's election process." Provincial House Inc. v. NLRB, 568 F.2d 8, 11 (6th Cir.1977), holds that an NLRB agent's getting introduced at a union meeting "tends to destroy 'the neutrality of the Board's procedures.' "
 
 
 12
 The NLRB argues that there was no violation of the appearance of impartiality because there is no proof anyone knew about the extension. But the union people who got the extension knew about it. Employees approached for cards during the additional 4 days have to have known about it, for if they were not told by the Union representatives that they had "back-doored" the NLRB and obtained an extension, it would have made no sense to sign the cards after the deadline. The company knew about it after its chance discovery.
 
 
 13
 The NLRB argues that there was no prejudice because Kohn could have ordered an election with less than 30%. But the NLRB's counsel admitted at oral argument that it was against NLRB policy to do so. Moreover, an Athbro violation does not require prejudice. The harm, in any event, was caused by the appearance of being "in cahoots," not by the four day extension.
 
 
 14
 The appearance that the NLRB would change the rules in midstream to prevent a union loss would (1) weaken the anti-union employees, by producing a sense of futility and fear of public affiliation with the losing side, and (2) embolden the pro-union employees to engage in threats and harassment, confident that the NLRB would not hold them to the rules of "laboratory conditions." General Shoe Corp., 77 N.L.R.B. 124 (1948).
 
 
 15
 Our decision in US Ecology v. National Labor Relations Board, 772 F.2d 1478 (9th Cir.1985), is distinguishable, because the conduct in that case did not involve ex parte manipulation between the union and the Board. Rather, "the Board agent delegated only minor tasks [to the union representative] and did so in a manner which did not compromise the Board's appearance of neutrality." Id. at 1483. Here, Kohn's grant of an extension to the union after ex parte contact could not help but undermine the appearance of neutrality.
 
 
 16
 I would order a new election because of the taint the Acting Regional Director cast on this one, not just a hearing on the death threats and other misconduct.
 
 
 
 *
 The parties are familiar with the facts of this case; we will not restate them here. This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3