65 F.3d 176
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNDERWRITERS LABORATORIES, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
UNDERWRITERS LABORATORIES, INC., Respondent.
 Nos. 93-70862, 93-70927.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1995.
Decided Aug. 24, 1995.
 
 Before: CHOY, CANBY, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Underwriters Laboratories, Inc. petitions for review and the National Labor Relations Board applies for enforcement of the Board's order finding that Underwriters violated Secs. 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. Secs. 158(a)(1) and (5), when it refused to bargain with the International Union of Operating Engineers, Stationary Local No. 39, AFL-CIO. The union had been certified as the exclusive bargaining representative of a unit of Underwriters' employees. We grant Underwriters' petition and deny the Board's.
 
 
 3
 There is no dispute about the fact that Underwriters has refused to bargain with the Union and that its sole defense is that the Union was not properly certified. If Underwriters is correct, as we determine it is, it did not commit an unfair labor practice when it refused to bargain. See NLRB v. West Coast Liquidators, Inc., 725 F.2d 532, 534 (9th Cir.1984); NLRB v. Advanced Systems, Inc., 681 F.2d 570, 572 (9th Cir.1982).
 
 
 4
 At a meeting two days before a representation election, a Union representative, while discussing union authorization cards, said that "if the employees voted the union out, the company would find ways to get rid of us." Those statements at the very least strongly implied that if the Union lost the election, Underwriters would fire the employees who had shown the Union some support. Seven or perhaps all ten of the employees eligible to vote were at the meeting. The vote of the employees in favor of representation by the Union was six to four. Thus, a change of one vote would have resulted in the Union's loss of the election.
 
 
 5
 Underwriters sought an evidentiary hearing because the threat was inherently coercive and the election was very close. This case is remarkably like NLRB v. Valley Bakery, Inc., 1 F.3d 769 (9th Cir.1993). There the statements were almost exactly the same and the election was also close. We said that "with the evidence the Company was able to present and the reasonable inferences to be drawn from that evidence, the statements may have influenced some employees' votes and, therefore, the Regional Director should have conducted an evidentiary hearing." Id. at 774; see also Advanced Systems, 681 F.2d at 572. We see no justification for applying a different rule here.
 
 
 6
 However, the Board relies upon Janler Plastic Mold Corp., 186 NLRB 540, 540 (1970) for the proposition that the threat was not really credible because it was illogical, but we rejected that argument in Valley Bakery, 1 F.3d at 773. The Board also points to Midland Nat'l Life Ins. Co., 263 NLRB 127, 133 (1982), for the theory that it will not, in general, consider the truth or falsity of a campaign statement. In Valley Bakery, we did not consider that argument. 1 F.3d at 773 n. 4. Nevertheless, the general rule does not apply here because in Midland the Board said that it would "continue to protect against other campaign conduct, such as threats, promises, or the like, which interferes with employee free choice." 263 NLRB at 133 (emphasis added). As we said in Valley Bakery, what the Union allegedly did here was issue "threats" that, at least prima facie, did interfere with "free choice." 1 F.3d at 773, 774.
 
 
 7
 In fine, Underwriters was entitled to a hearing before the Union was certified. The Board's failure to grant a hearing was an abuse of discretion; so, too, was the certification itself. See id. at 772; Napili Shores Condominium Homeowners' Ass'n v. NLRB, 939 F.2d 717, 718 (9th Cir.1991).
 
 
 8
 Underwriters' petition for review is GRANTED, the Board's petition for enforcement is DENIED, and this case is REMANDED for an evidentiary hearing.
 
 CANBY, Circuit Judge, dissenting:
 
 9
 In Janler Plastic Mold Corp., 208 N.L.R.B. 167 (9174), the Board ruled that a statement that "employees would lose their jobs if they did not vote for the union," purportedly made by union officials, was not coercive. In N.L.R.B. v. Valley Bakery, Inc., 1 F.3d 769 (9th Cir.1993), we held that an evidentiary hearing was required when a union representative said "that those employees who previously had signed authorization cards would be discharged by [the employer] if the Union did not win the election." Id. at 771. We said that this threat was different from that in Janler because the threat in Janler referred to employees in general. "Such an assertion might indeed be labeled illogical, and Valley's employees could be expected to conclude that the Company would not retaliate against those who aided its cause by voting against the Union." Valley Bakery, 1 F.3d at 773. Valley Bakery differed from Janler, we said, because in Valley Bakery "[t]he only plausible interpretation of the threats alleged ... was that if the Union lost the election the Company would be free to retaliate against employees who had previously signed union authorization cards by firing them, and that it would in fact do so." Id.
 
 
 10
 In the present case, the "threat" is similar to that in Janler; it is directed to employees generally and it is illogical. One declaration, that of Karen Raynor, states that "a union representative stated that despite what the company may have told us, if we vote no, we will lose our jobs." The second statement, that of Phil Menacho, states that "while discussing signing authorization cards, a union representative stated something to the effect that if the employees voted the union out, the company would find ways to get rid of us." The statement does not say that Menacho had signed an authorization card, or that "us" meant "those who had signed authorization cards." The plausible interpretation of both statements is that, if the employees voted against the union, the employer would fire the employees.
 
 
 11
 These "threats" or predictions of company action, are illogical and fall within Janler. There is no reason for the company to fire employees because the employees voted against the Union.
 
 
 12
 I recognize that the line between Janler and Valley Bakery is a fine one, but it should be preserved. Valley Bakery should not be expanded beyond its facts, because imprecise statements about bad things that the company may do if the union loses are but parts of campaign rhetoric that ought not easily to be allowed to forestall the process of majority vote and recognition if the union achieves a majority. There is good reason behind the Board's decision in Midland National Life Ins. Co., 263 N.L.R.B. 127 (1982), not to overturn elections because of misrepresentations of fact occurring during the campaign. That policy is negated if the rule of Valley Bakery is expanded to apply to statements other than the very specific type of threat upon which it was based.
 
 
 13
 I would therefore enforce the order of the Board.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3