101 F.3d 685
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
TABER PARTNERS I, d/b/a Ambassador Plaza Hotel & Casino, a
Radisson Plaza Hotel, Petitioner/Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent/Cross-Petitioner.
 Nos. 95-4166, 95-4202.
 United States Court of Appeals, Second Circuit.
 May 29, 1996.
 
 Petition for review and enforcement of an order of the National Labor Relations Board (Gould, Chairman and Browning and Cohen, Members ).
 Appearing for Petitioner: John Hunt, Atlanta, Georgia.
 Appearing for Respondent: Vincent J. Falvo, Jr., National Labor Relations Board, Washington, D.C.
 NLRB
 REVIEW DENIED; ORDER ENFORCED.
 Present: FEINBERG, OAKES, WINTER, Circuit Judges.
 
 
 1
 Taber Partners I, doing business as Ambassador Plaza Hotel & Casino, a Radisson Plaza Hotel, petitions for review of a September 13, 1995 order of the National Labor Relations Board finding that Taber violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) & (5), by refusing to bargain with the Union De Trabajadores De La Industria Gastronomica De Puerto Rico, Local 610, HEREIU, AFL-CIO. The National Labor Relations Board cross-petitions for enforcement of its order. Although Taber concedes that it refused to bargain with the Union or provide the Union with any information concerning its employees, it argues that, contrary to the findings of the Board, it was under no obligation to do so because the Union had been improperly certified. In particular, Taber contends that the Board should not have certified the Union because the Union's chief organizer, Luis Rodriguez, engaged in coercive and threatening behavior prior to and at the time of the election which interfered with the employees' unfettered free choice. We disagree and enforce the Board's order.
 
 
 2
 We will not interfere with the Board's decision to certify or not to certify a representation election "save for the most glaring discrimination or abuse." NLRB v. Arthur Sarnow Candy Co., 40 F.3d 552, 556 (2d Cir.1994) (quotation marks and citation omitted). The party contesting the results of a representation election bears the burden of demonstrating that the election was unfair. NLRB v. Mattison Machine Works, 365 U.S. 123, 123-24 (1961).
 
 
 3
 Taber presented evidence of comments made by Rodriguez on various occasions that he would be fired if the Union lost the election. Taber argues that these statements were intended to intimidate employees into voting for the Union. However, absent the subjective impressions of some employees, there is simply no record evidence indicating that if Rodriguez lost his job he intended to retaliate against the anti-union employees. See Van Leer Containers Inc. v. NLRB, 943 F.2d 786, 790 (7th Cir.1991) (subjective impression of employees not conclusive where the conduct could not reasonably be viewed as a threat). The hearing officer was entitled to credit Rodriguez's testimony that his statements were simply predictions of how the hotel would react to his union organizing activities.
 
 
 4
 Moreover, although Rodriguez may have referred to anti-union employees as "rats" and "snitches," name-calling or the use of pejorative language during the course of a union campaign is not objectionable conduct. See Bridgeport Fittings, Inc. v. NLRB, 877 F.2d 180 (2d Cir.1989) ("rude" or "impolite talk", without more, does not justify setting aside election); Firestone Textiles Co., 244 NLRB 168, 171 (1979) (derogatory comments had no impact on employee's votes).
 
 
 5
 In another incident, Rodriguez allegedly entered the employees' lounge, "threw" a notebook down on the table and ordered the employees to sign up in support of the union. However, because this incident took place before union supporters began collecting authorization cards, and, therefore, before the election petition was filed with the Board, it cannot provide grounds for challenging the result of the election. See Ideal Electric & Mfg. Co., 134 NLRB 1275, 1277-78 (1961) (restricting examination of potentially objectionable conduct to the "critical period" between the fling of the election petition and the election). Likewise, Taber's claim that Rodriguez told another pro-union employee that they were going to have to "do something against" an anti-union employee also falls outside the "critical period" between petition and election and thus cannot supply grounds for reversal.
 
 
 6
 Taber's argument that these incidents should nevertheless be considered because they add "meaning and dimension" to Rodriguez's subsequent conduct is likewise without merit. See Bridgeport Fittings, Inc., 877 F.2d at 186-87 (pre-petition threat of violent retaliation cannot serve as a basis for overturning of election unless conduct is likely to have significant impact on voting). Cases in which courts have allowed pre-filing events to be considered have done so only where the pre-filing events were violent in nature and continued after the filing. See e.g., NLRB v. L & J Equipment Co., 745 F.2d 224, 236-39 (3d Cir.1984) (where violent incidents occurred post-filing, hearing officer could consider pre-filing violent incident to shed light on later events).
 
 
 7
 Thus, the only relevant evidence of objectionable conduct during the election campaign involves a conversation between Rodriguez and an employee named David Marrero in which Rodriguez allegedly stated that he would "harm" employees who voted against the Union and indicated that he would "cut some heads off" if the Union lost. Rodriguez testified that he never used these words. The hearing officer refused to credit Marrero's version of events on the grounds that: (i) it was uncorroborated by other employees who Marrero claimed were in the room at the time the statement was made and (ii) the hotel did not take any action despite Marrero's assertion that he reported the incident. Based on this record, we cannot say that the hearing officer's finding that Rodriguez never threatened any physical harm was an abuse of discretion. See NLRB v. Semco Printing Center, Inc., 721 F.2d 886, 888 (2d Cir.1983) (the court "will not overturn findings based upon the Hearing Officer's assessment of witness credibility unless they are hopelessly incredible or they flatly contradict either the law of nature or undisputed documentary testimony.") (internal quotation marks and citation omitted).
 
 
 8
 Taber further argues that the Board-run representation election should be set aside based on the cumulative effect of its objections to the election and the "closeness" of the Union's 29-20 win. Even assuming that we were to consider a 29-20 outcome in favor of the Union to be a close vote, this factor is inconsequential given the almost complete absence of meritorious objections. See NLRB v. WFMT, 997 F.2d 269, 279 (7th Cir.1993) ("[w]hen invoking the cumulative impact argument, [petitioner] must at the very least demonstrate conduct that is legally actionable in its component parts or offer the Board detailed evidence of the pattern the activity formed and its influence on the election") (internal quotation marks and citation omitted). Likewise, Taber's argument that Rodriguez's size and expertise in karate created an atmosphere of intimidation is unpersuasive given Taber's inability to prove specific incidents of misconduct on the part of Rodriguez. Thus, we reject Taber's claim that Rodriguez's behavior prior to and during the campaign renders the representation election invalid.
 
 
 9
 Nor do we find merit in petitioner's suggestion that Rodriguez's presence as one of the Union's designated observers at the polling site intimidated employees. It is undisputed that Rodriguez engaged in no misbehavior while acting as a union observer. Taber nevertheless argues that Rodriguez's previous conduct, when combined with his status as a supervisor of the voting employees, rendered Rodriguez's mere presence at the election site sufficiently coercive to warrant decertification. We disagree. Although the Board's Case Handling Manual specifies that observers must be non-supervisory employees of the employer, the Manual does not provide binding rules. Elections will therefore not be invalidated based on minor deviations from the guidelines that are not shown to raise a "reasonable doubt as to the fairness and validity of the election." Kirsch Drapery Hardware, 299 NLRB 363, 364 (1990) (quoting Polymers, Inc., 174 NLRB 282 (1969), enforced, 414 F.2d 999 (2d Cir.1969)).
 
 
 10
 The parties to a representation election may place an observer of their selection at the polling place, 29 C.F.R. § 102.69, and we have previously declined to set aside elections based solely upon the identity of the observers selected. See NLRB v. Black Bull Carting, Inc., 29 F.3d 44, 46 (2d Cir.1994) (refusing to set aside representation election on basis of observer's status as a non-employee union official); NLRB v. U.S. Cablevision Corp., 614 F.2d 341, 342 (2d Cir.) (refusing to set aside election on the ground that observer was an employee who opposed the union's efforts), cert. denied, 449 U.S. 449 U.S. 836 (1980); see also Embassy Suites, Inc, 313 NLRB 302 (1993) (use of lawfully discharged employee as observers is not, by itself, objectionable conduct where there is no evidence of coercion by the employee). The fact that some employees might have subjectively felt pressured by Rodriguez's presence as an election observer is insufficient evidence of irregularity and we refuse to set aside the election on this basis.
 
 
 11
 Therefore, substantial evidence supports the Board's finding that Taber violated sections 8(a)(1) and 8(a)(5) of the Act. See NLRB v. Donald E. Hernly, Inc., 613 F.2d 457, 461-62 (2d Cir.1980) (citing Universal Camera Corp v. NLRB, 340 U.S. 474 (1951)) (court will grant deference to Board's findings where such findings are supported by substantial evidence). The petition for review is denied, and the order of the Board is therefore enforced.